# 22-0344-cv

## United States Court of Appeals

*for the*

## Second Circuit

LORI MACNAUGHTON, individually and on
behalf of all others similarly situated,

*Plaintiff-Appellant,*

– v. –

YOUNG LIVING ESSENTIAL OILS, LC,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX

ALEXIA RENEE BRANCATO
KIRKLAND & ELLIS LLP
*Attorneys for Defendant-Appellee*
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

MASON BARNEY
SIRI & GLIMSTAD LLP
*Attorneys for Plaintiff-Appellant*
200 Park Avenue, 17th Floor
New York, New York 10166
(212) 532-1091

i

## TABLE OF CONTENTS

**Page**

United States District Court Docket Entries .............. A-1

First Amended Class Action Complaint, dated
March 30, 2021 ...................................... A-7

Transcript of Proceeding held before the Honorable
Brenda K. Sannes, dated December 9, 2021 ......... A-55

Memorandum Decision and Order of the Honorable
Brenda K. Sannes, filed December 16, 2021 ......... A-77

Judgment, dated January 19, 2022 ........................... A-107

Notice of Appeal, dated February 17, 2022 ............... A-109

APPEAL,CLOSED

## U.S. District Court
## Northern District of New York − Main Office (Syracuse) [NextGen CM/ECF
## Release 1.6 (Revision 1.6.3)] (Syracuse)
## CIVIL DOCKET FOR CASE #: 5:21−cv−00071−BKS−ML

Macnaughton v. Young Living Essential Oils, LC
Assigned to: Judge Brenda K. Sannes
Referred to: Magistrate Judge Miroslav Lovric
Cause: 28:1332 Diversity−Fraud

Date Filed: 01/20/2021
Date Terminated: 01/19/2022
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Federal Question

**Plaintiff**

**Lori Macnaughton**
*individually and on beha.f c.f all others
similarly situated*

represented by **Aaron Siri**
Siri & Glimstad LLP
200 Park Avenue, 17th Floor
New York, NY 10166
212−532−1091
Fax: 646−417−5967
Email: aaron@sirillp.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Gary M. Klinger**
Mason Lietz & Klinger LLP
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
202−429−2290
Fax: 202−429−2294
Email: gklinger@milberg.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Gary E. Mason**
Mason Lietz & Klinger LLP
5101 Wisconsin Avenue, NW
Suite 305
Washington, DC 20016
202−429−2290
Fax: 202−429−2294
Email: gmason@masonllp.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Mason A. Barney**
Siri & Glimstad LLP
200 Park Avenue, 17th Floor
New York, NY 10166
212−532−1091
Fax: 646−417−5967
Email: mbarney@sirillp.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Young Living Essential Oils, LC**

represented by **Alexia Renee Brancato**
Kirkland & Ellis LLP − NY Office
601 Lexington Avenue
New York, NY 10022

212−909−3344
Email: alexia.brancato@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeremy A Fielding**
Kirkland & Ellis LLP
1601 Elm Street
Dallas, TX 75201
214−972−1754
Email: jeremy.fielding@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olivia Arden Adendorff**
Kirkland & Ellis LLP
1601 Elm Street
Dallas, TX 75201
214−972−1758
Email: olivia.adendorff@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachael Rezabek**
Kirkland & Ellis LLP
1601 Elm Street
Dallas, TX 75201
214−972−1674
Email: rachael.rezabek@kirkland.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/20/2021 | 1 | CLASS ACTION COMPLAINT WITH JURY DEMAND against Young Living Essential Oils, LC (Filing fee $402 receipt number ANYNDC−5389169) filed by Lori Macnaughton. (Attachments: # 1 Civil Cover Sheet)(kmc) (Entered: 01/21/2021) |
| 01/21/2021 | 2 | Summons Issued as to Young Living Essential Oils, LC. (kmc) (Entered: 01/21/2021) |
| 01/21/2021 | 3 | G.O. 25 FILING ORDER ISSUED: Initial Telephone Rule 16 Conference set for 4/21/2021 at 11:00 AM before Magistrate Judge Miroslav Lovric. Civil Case Management Plan must be filed and Mandatory Disclosures are to be exchanged by the parties on or before 4/14/2021. (Pursuant to Local Rule 26.2, mandatory disclosures are to be exchanged among the parties but are NOT to be filed with the Court.) (kmc) (Entered: 01/21/2021) |
| 01/21/2021 | 4 | NOTICE of Admission Requirement as to Party Plaintiff; Attorney Gary M. Klinger, Email address is gklinger@masonllp.com. Phone number is 202−640−1160. Admissions due by 2/4/2021. [Copy served upon attorney Klinger by email on 1/21/2021](kmc) (Entered: 01/21/2021) |
| 02/01/2021 | 5 | SUMMONS Returned Executed by Lori Macnaughton. Young Living Essential Oils, LC served on 1/26/2021, answer due 2/16/2021., AFFIDAVIT of Service for Summons, Complaint and Other Case Initiating Documents served on Lindsey Larsen on 01/26/2021, filed by Lori Macnaughton. (Barney, Mason) (Entered: 02/01/2021) |
| 02/04/2021 | 6 | MOTION for Limited Admission Pro Hac Vice of Gary M. Klinger Filing fee $100, receipt number ANYNDC−5408741. filed by Lori Macnaughton. (Attachments: # 1 Declaration of Sponsor, # 2 Petition for Admission to Practice, # 3 IL COGS, # 4 Attorney Registration Form, # 5 Proposed Order/Judgment) Motions referred to Miroslav Lovric. (Mason, Gary) (Entered: 02/04/2021) |
| 02/05/2021 | | **Notice of Filing Deficiency** re: 6 Motion for Limited Admission Pro Hac Vice of Gary M. Klinger. Pursuant to LR 83.1(d), the sponsor and/or applicant **MUST** provide the following required documents: Petition for Admission to Practice form published by the Court 12/2019. The corrected documents should be electronically filed with the |

| | | |
|---|---|---|
| | | Court by selecting the 'Supplemental Admission documents' event, which is found under the 'Other Documents' menu. Once all requirements under LR 83.1(d) have been met, the motion will be forwarded to the assigned Magistrate Judge for consideration. (tad, ) (Entered: 02/05/2021) |
| 02/05/2021 | 7 | Supplemental Admission documents re: 6 Motion for Limited Admission Pro Hac Vice,. (Mason, Gary) (Entered: 02/05/2021) |
| 02/08/2021 | 8 | NOTICE of Appearance by Alexia Renee Brancato on behalf of Young Living Essential Oils, LC (Brancato, Alexia) (Entered: 02/08/2021) |
| 02/09/2021 | 9 | ORDER granting 6 Motion for Limited Admission Pro Hac Vice. Counsel is hereby advised that as of January 16, 2018, the NYND has converted to NextGen. Due to this conversion, you must now register for Pro Hac Vice access through your PACER account. This is the only notice you will receive concerning this requirement. You will not have access to electronically file in this case until your Pro Hac Vice request has been processed through the PACER system. Step−by−step instructions on how to complete this process are available at http://www.nynd.uscourts.gov/attorney−admissions−nextgen. Signed by Magistrate Judge Miroslav Lovric on 2/9/2021. (jdp ) (Entered: 02/09/2021) |
| 02/09/2021 | 10 | NOTICE of Appearance by Gary M. Klinger on behalf of Lori Macnaughton (Klinger, Gary) (Entered: 02/09/2021) |
| 02/09/2021 | 11 | STIPULATION re 1 Complaint, 5 Summons Returned Executed,, Affidavit of Service, / Stipulation and [Proposea] Order Extending Defendant Young Living Essential Oils, LC's Deadline to Respond to Plaintiff's Class Action Complaint by Young Living Essential Oils, LC submitted to Judge Brenda K. Sannes. (Brancato, Alexia) (Entered: 02/09/2021) |
| 02/10/2021 | 12 | ORDER granting 11 Stipulation. Young Living Essential Oils, LC answer now due 3/9/2021. Signed by Magistrate Judge Miroslav Lovric on 2/10/2021. (jdp ) (Entered: 02/10/2021) |
| 02/11/2021 | 13 | MOTION for Limited Admission Pro Hac Vice of Olivia Adendorff Filing fee $100, receipt number ANYNDC−5417733. filed by Young Living Essential Oils, LC. (Attachments: # 1 Declaration of Sponsor, # 2 Attorney Registration Form, # 3 Petition for Admission to Practice, # 4 Certificate of Good Standing, # 5 Proposed Order) Motions referred to Miroslav Lovric. (Brancato, Alexia) (Entered: 02/11/2021) |
| 02/11/2021 | 14 | MOTION for Limited Admission Pro Hac Vice of Jeremy A. Fielding Filing fee $100, receipt number ANYNDC−5417756. filed by Young Living Essential Oils, LC. (Attachments: # 1 Declaration of Sponsor, # 2 Attorney Registration Form, # 3 Petition for Admission to Practice, # 4 Certificate of Good Standing, # 5 Proposed Order) Motions referred to Miroslav Lovric. (Brancato, Alexia) (Entered: 02/11/2021) |
| 02/12/2021 | 15 | ORDER granting 13 Motion for Limited Admission Pro Hac Vice. Counsel is hereby advised that as of January 16, 2018, the NYND has converted to NextGen. Due to this conversion, you must now register for Pro Hac Vice access through your PACER account. This is the only notice you will receive concerning this requirement. You will not have access to electronically file in this case until your Pro Hac Vice request has been processed through the PACER system. Step−by−step instructions on how to complete this process are available at http://www.nynd.uscourts.gov/attorney−admissions−nextgen. Signed by Magistrate Judge Miroslav Lovric on 2/12/2021. (jdp ) (Entered: 02/12/2021) |
| 02/12/2021 | 16 | ORDER granting 14 Motion for Limited Admission Pro Hac Vice. Counsel is hereby advised that as of January 16, 2018, the NYND has converted to NextGen. Due to this conversion, you must now register for Pro Hac Vice access through your PACER account. This is the only notice you will receive concerning this requirement. You will not have access to electronically file in this case until your Pro Hac Vice request has been processed through the PACER system. Step−by−step instructions on how to complete this process are available at http://www.nynd.uscourts.gov/attorney−admissions−nextgen. Signed by Magistrate Judge Miroslav Lovric on 2/12/2021. (jdp ) (Entered: 02/12/2021) |

| 02/16/2021 | 17 | NOTICE of Appearance by Olivia Arden Adendorff on behalf of Young Living Essential Oils, LC (Adendorff, Olivia) (Entered: 02/16/2021) |
|---|---|---|
| 02/16/2021 | 18 | NOTICE of Appearance by Jeremy A Fielding on behalf of Young Living Essential Oils, LC (Fielding, Jeremy) (Entered: 02/16/2021) |
| 03/09/2021 | 19 | MOTION to Dismiss for Failure to State a Claim filed by Young Living Essential Oils, LC. Response to Motion due by 3/30/2021. Reply to Response to Motion due by 4/6/2021 (Attachments: # 1 Memorandum of Points and Authorities, # 2 Declaration of Alexia R. Brancato, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Request for Judicial Notice) (Adendorff, Olivia) (Entered: 03/09/2021) |
| 03/10/2021 | 20 | TEXT ORDER: In light of the Motion to Dismiss 19 , the Rule 16 initial conference scheduled for 4/21/2021, the deadlines for filing a Civil Case Management Plan and the exchange of mandatory disclosures, are STAYED without date. SO ORDERED by Magistrate Judge Miroslav Lovric on 3/10/2021. (jdp ) (Entered: 03/10/2021) |
| 03/30/2021 | 21 | AMENDED COMPLAINT against Young Living Essential Oils, LC filed by Lori Macnaughton. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C)(Barney, Mason) (Entered: 03/30/2021) |
| 03/30/2021 | 22 | RESPONSE in Opposition re 19 MOTION to Dismiss for Failure to State a Claim filed by Young Living Essential Oils, LC. filed by Lori Macnaughton. (Barney, Mason) (Entered: 03/30/2021) |
| 04/02/2021 | | ***Answer due date updated for Young Living Essential Oils, LC answer due 4/13/2021. (kmc) (Entered: 04/02/2021) |
| 04/02/2021 | 23 | STIPULATION re 21 Amended Complaint / *Stipulation and [Proposea] Order Extending Defendant Young Living Essential Oils, LC's Deadline to Respond to Plaintiff's Amended Complaint and to Set Corresponding Briefing Schedule* by Young Living Essential Oils, LC submitted to Judge Brenda K. Sannes. (Adendorff, Olivia) (Entered: 04/02/2021) |
| 04/06/2021 | 24 | ORDER granting 23 Stipulation. Answer by defendants, Young Living Essential Oils, LLc now on or before 4/27/2021. Signed by Magistrate Judge Miroslav Lovric on 4/6/2021. (jdp ) (jdp, ). (Entered: 04/06/2021) |
| 04/07/2021 | 25 | TEXT ORDER: The Court has reviewed Dkt. No. 23 . To the extent counsel are requesting that their 19 motion be withdrawn, that request is GRANTED and the 19 motion is hereby deemed withdrawn. SO ORDERED by Judge Brenda K. Sannes on 4/7/2021. (rjb, ) (Entered: 04/07/2021) |
| 04/27/2021 | 26 | MOTION to Dismiss for Failure to State a Claim *of the First Amended Complaint* filed by Young Living Essential Oils, LC. Response to Motion due by 5/18/2021. Reply to Response to Motion due by 5/25/2021 (Attachments: # 1 Memorandum of Points and Authorities in Support, # 2 Declaration of Olivia Adendorff in Support, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Request for Judicial Notice) (Adendorff, Olivia) (Entered: 04/27/2021) |
| 05/25/2021 | 27 | RESPONSE in Opposition re 26 MOTION to Dismiss for Failure to State a Claim *of the First Amended Complaint* filed by Young Living Essential Oils, LC. filed by Lori Macnaughton. (Barney, Mason) (Entered: 05/25/2021) |
| 05/27/2021 | 28 | TEXT ORDER: On May 25, 2021, the Court received Plaintiff's Response 27 in Opposition to Defendant's Motion to Dismiss. Plaintiff's Response was due by May 18, 2021. 26 . Plaintiff has not made any request for permission to extend that deadline. Plaintiff is directed to file a letter by June 7, 2021, explaining why Plaintiff's submission was late and why the Court should accept the untimely submission. The due date for a reply is adjourned pending the Court's review of Plaintiff's submission. So Ordered by Judge Brenda K. Sannes on 5/27/2021. (nmk) (Entered: 05/27/2021) |
| 05/27/2021 | 29 | LETTER BRIEF *in Response to Docket Entry No. 28 (Text Order)* by Lori Macnaughton. (Siri, Aaron) (Entered: 05/27/2021) |
| 06/01/2021 | 30 | TEXT ORDER: The Court has reviewed Plaintiff's letter brief 29 and recognizes that the briefing schedule set on April 27, 2021 is incorrect because the Court had previously approved the briefing schedule stipulated to by the parties 24 . In accord with that schedule, Defendant's reply is due on June 8, 2021. So Ordered by Judge |

| | | Brenda K. Sannes on 6/1/2021. (nmk) (Entered: 06/01/2021) |
|---|---|---|
| 06/08/2021 | 31 | REPLY to Response to Motion re 26 MOTION to Dismiss for Failure to State a Claim *of the First Amended Complaint* filed by Young Living Essential Oils, LC. filed by Young Living Essential Oils, LC. (Attachments: # 1 Declaration of Olivia Adendorff, # 2 Exhibit H)(Adendorff, Olivia) (Entered: 06/08/2021) |
| 06/08/2021 | 32 | Letter Motion from Olivia Adendorff for Young Living Essential Oils, LC requesting respectfully oral argument on our pending Motion to Dismiss (Dkt. No. 26). submitted to Judge Brenda K. Sannes . (Adendorff, Olivia) (Entered: 06/08/2021) |
| 06/09/2021 | 33 | MOTION for Limited Admission Pro Hac Vice of Rachael A. Rezabek Filing fee $100, receipt number ANYNDC−5549626. (Attachments: # 1 Declaration of Sponsor, # 2 Attorney Registration Form, # 3 Petition for Admission to Practice, # 4 Separate Statement Supporting Petition, # 5 Certificate of Good Standing, # 6 Proposed Order) Motions referred to Miroslav Lovric. (Brancato, Alexia) (Entered: 06/09/2021) |
| 06/16/2021 | 34 | TEXT ORDER: granting 32 letter motion for oral argument. A hearing date will be set in due course. So Ordered by Judge Brenda K. Sannes on 6/16/2021. (nmk) (Entered: 06/16/2021) |
| 06/25/2021 | 35 | TEXT ORDER granting 33 Motion for Limited Admission Pro Hac Vice of Rachel Rezabek. Counsel is hereby advised that as of January 16, 2018, the NYND has converted to NextGen. Due to this conversion, you must now register for Pro Hac Vice access through your PACER account. **This is the only notice you will receive concerning this requirement. You will not have access to electronically file in this case until your Pro Hac Vice request has been processed through the PACER system.** Step−by−step instructions on how to complete this process are available at http://www.nynd.uscourts.gov/attorney−admissions−nextgen. COUNSEL MUST THEREAFTER FILE A NOTICE OF APPEARANCE IN THIS ACTION IN ORDER TO RECEIVE NOTICES OF ELECTRONIC FILINGS IN THIS CASE. SO ORDERED by Chief Judge Glenn T. Suddaby on 6/25/2021. (sal) (Entered: 06/25/2021) |
| 06/25/2021 | 36 | NOTICE of Appearance by Rachael Rezabek on behalf of Young Living Essential Oils, LC (Rezabek, Rachael) (Entered: 06/25/2021) |
| 11/23/2021 | | TEXT NOTICE of Hearing re 26 MOTION to Dismiss: A video Motion Hearing is set for 12/9/2021 at 02:30 PM in Syracuse before Judge Brenda K. Sannes. The clerk will provide counsel with a link to the video hearing. (nmk) (Entered: 11/23/2021) |
| 12/09/2021 | | TEXT Minute Entry for Motion Hearing held on 12/9/2021 via video before Judge Brenda K. Sannes re 26 MOTION to Dismiss: After questioning counsel and hearing supplemental arguments, the court reserves decision. A written order will be issued. Appearances: Mason Barney, Esq. for plaintiff; Olivia Adendorff, Esq. and Rachael Rezabek, Esq. for defendant. (Court Reporter: Hannah Cavanaugh. Time: 2:35 PM − 3:05 PM.) (nmk) (Entered: 12/09/2021) |
| 12/16/2021 | 37 | MEMORANDUM−DECISION AND ORDER: It is hereby ORDERED that Defendant's motion to dismiss (Dkt. No. 26 ) is GRANTED. It is further ORDERED that the First Amended Complaint (Dkt. No. 21 ) is DISMISSED without prejudice. It is further ORDERED that Plaintiff may file a letter motion seeking permission to amend, as set forth above, by January 17, 2022. It is further ORDERED that the Clerk is directed to close this case if no letter motion to amend is filed by January 17, 2022. Signed by Judge Brenda K. Sannes on 12/16/2021. (nmk) (Entered: 12/16/2021) |
| 01/19/2022 | 38 | JUDGMENT: It is ORDERED and ADJUDGED that Defendant's motion to dismiss (Dkt. No. 26 ) is GRANTED. It is further ORDERED that the First Amended Complaint (Dkt. No. 21 ) is DISMISSED without prejudice and this action is closed. (nmk) (Entered: 01/19/2022) |
| 02/17/2022 | 39 | NOTICE OF APPEAL by Lori Macnaughton. Filing fee $ 505, receipt number ANYNDC−5809079. (Barney, Mason) (Entered: 02/17/2022) |
| 02/18/2022 | 40 | ELECTRONIC NOTICE AND CERTIFICATION sent to US Court of Appeals re 39 Notice of Appeal. (ztc, ) (Entered: 02/18/2022) |

| 03/02/2022 | 41 | TRANSCRIPT REQUEST by Lori Macnaughton for proceedings held on 12/09/2021 before Judge Hon. Brenda K. Sannes.. (Barney, Mason) (Entered: 03/02/2022) |
|---|---|---|
| 03/10/2022 | 42 | TRANSCRIPT of Proceedings: Video Motion held on 12/9/2021 before Judge Brenda K. Sannes, Court Reporter: Hannah Cavanaugh, Telephone number: 315−234−8545. **IMPORTANT NOTICE − REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/31/2022. Redacted Transcript Deadline set for 4/11/2022. Release of Transcript Restriction set for 6/8/2022. Notice of Intent to Redact due by 3/15/2022 (hfc, ) (Entered: 03/10/2022) |
| 03/14/2022 | 43 | TRANSCRIPT REQUEST by Young Living Essential Oils, LC for proceedings held on 12/09/2021 before Judge Brenda K. Sannes.. (Rezabek, Rachael) (Entered: 03/14/2022) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LORI MACNAUGHTON, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 5:21-cv-00071-BKS-ML |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| YOUNG LIVING ESSENTIAL OILS, LC, | |
| Defendant. | JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff, Lori MacNaughton, individually and on behalf of all other similarly situated persons, by her undersigned attorneys, brings this First Amended Class Action Complaint against Defendant, Young Living Essential Oils, LC, ("Young Living" or "Defendant"), alleging the following based upon personal knowledge, and, as to all other matters, alleges, upon information and belief and investigation of her counsel, as follows:

**NATURE OF THE ACTION**

1. This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased essential oil products labeled as "therapeutic" from Defendant (hereinafter the "Products").[1]

2. Unbeknownst to Plaintiff and members of the Classes, and contrary to the express representations made on its label, the Products, falsely guarantee to be "therapeutic" and provide

---

[1] A complete listing of the Products can be found here: https://www.youngliving.com/en_US/products/c/essential-oil-products (last accessed December 2, 2020).

a number of health-related benefits, when in reality the Products provide no scientifically proven healthy or medicinal benefit and may actually be harmful[2].

3.     As a result of Defendant's unlawful and deceptive conduct, Plaintiff and Members of the Classes have been, and continue to be, harmed by purchasing the Product under false pretenses and paying more for it than they otherwise would have, if they would have purchased it at all.

4.     Defendants' uniform acts and omissions in connection with the marketing, sale and delivery of the Products violate the consumer protection laws of the states of residence of Plaintiff and Members of the Classes, breaches Defendants' express and implied warranties to Plaintiff and Members of the Classes, and in the alternative, unjustly enriched the Defendants to the detriment of Plaintiff and the Members of the Classes.

5.     Plaintiff and Members of the Classes  seek damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## PARTIES

6.     Plaintiff, MacNaughton, is a citizen of the State of New York residing in the city of Syracuse and is a member of the Classes defined herein.  She purchased the Products for her own use during the four years preceding the filing of this Complaint and most recently on or around February of 2020.  Plaintiff MacNaughton and members of the Classes suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendant set forth in this Complaint.  Plaintiff MacNaughton and members of the Classes would not have purchased the Products had they been accurately marketed and labeled.

---

[2]     https://www.sciencealert.com/essential-oil-poisoning-is-on-the-rise-this-is-the-science-you-need-to-know (last accessed March 18, 2021)

7.     Defendant, Young Living, is a Utah limited liability company with its principal place of business in Lehi, Utah.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than most Class Members.

9.     The Court has personal jurisdiction over Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine by causing products to be sold in this District, including the Products purchased by Plaintiff.

10.     Venue is proper because a substantial portion of the events complained of occurred in this District and this Court has jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

### *Young Level's Business Model*

11.     Young Living is a company that purports to sell "essential oils" and other related products.  The company reported annual sales of more than $1 billion from 2015 and 2017.

12.     It was founded by Gary D. Young, a controversial figure who died in early 2018. Mr. Young's controversial moments include: (a) being prosecuted for practicing medicine without a license on multiple occasions; (b) running a now shuttered "Young Living Research Clinic" in Springville, Utah, (subsequently replaced by a Young Living clinic in Ecuador) where he

3

employed a physician convicted of manslaughter; and (c) allegations he nearly killed a patient through vitamin C infusions which caused renal failure.[3]

13.     Young Living markets its products, including the Products, through its website and other e-commerce channels.  Young Living directs and controls all significant aspects of the sale of its well-known products, including the manufacturing, marketing, packaging, distribution, and pricing.  The Products are sold throughout the United States and on consumer retail websites.

14.     In addition, Young Living markets its products, including the Products, by recruiting thousands of independent distributors who can sell directly to customers and earn commissions on sales to distributors recruited into a hierarchical network called 'downlines'.  Young Living refers to this as a multi-level marketing company.

15.     In 2017, the *New Yorker* reported that distributors are required by Young Living to make $100 of purchases per month to qualify for a commission.

16.     According to a public income statement, in 2016 approximately 94% of Young Living's active members made less than a dollar, while less than one tenth of one percent (about one thousand Royal Crown Diamond distributors) made over a million dollars.

17.     In April 2019, a nationwide class-action lawsuit was launched under the RICO Act against Young Living unrelated to the practices at issue in this complaint.  *See Julie O'Shaughnessy v. Young Living Essential Oils, LC*, Case No. 1:19-cv-412, Doc. 1. (W.D. Tex.).

---

[3] *See* Rachel Monroe, How Essential Oils Became the Cure for Our Age of Anxiety, THE NEW YORKER, October 9, 2018. Mr. Young was also the subject of an investigative report in which workers at his Tijuana based "medical clinic" represented to an undercover investigative reporter from the Los Angeles Times (who had provided the clinic with a blood sample) that he had "aggressive cancer and liver dysfunction" which required immediate, expensive therapy at the clinic. When the clinic workers were confronted with the fact the blood sample was provided by a healthy tabby cat named "Boomer," they responded the cat likely had leukemia. According to Ms. Moore's article, Boomer is alive and well, despite Young Living's gloomy diagnosis.

The complaint described Defendant's business operations as "an unlawful pyramid scheme created under the guise of selling essential oils for quasi-medicinal purposes. In truth, Young Living is nothing more than a cult-like organization falsely peddling the ever-elusive promise of financial success and an alternative lifestyle." *Id.*

***Young Living Falsely Markets its Essential Oils as Conferring Beneficial Health Effects***

18.     Young Living sells a variety of essential oils and essential oil blends to consumers. Consumers pay a premium for the Products when compared to other similar products. For instance:

a.   Young Living charges consumers $33.22 for a 15 ml bottle of lavender essential oil, while Walmart sells a 15 ml bottle of lavender essential oil for $4.98[4]

b.   Young Living charges consumers $103.29 for a 15 ml bottle of frankincense essential oil, while Amazon charges $21.50 for a 15 ml bottle of frankincense essential oil.[5]

c.   Young Living charges consumers $52.63 for a 5 ml bottle of valerian essential oil, while Eden's Garden charges $16.95 for a 5 ml bottle of valerian oil.[6]

---

[4]*See*     https://www.youngliving.com/en_us/products/lavender-essential-oil *compared to* https://www.walmart.com/ip/HoMedics-Lavender-Essential-Oil-Calming-Soothing-and-Relaxing-15-ml/613936499 (last visited March 17, 2020)

[5]   *See*   https://www.youngliving.com/en_us/products/frankincense-essential-oil *compared to* https://www.amazon.com/Aura-Cacia-Essential-Meditative-Frankincense/dp/B002Q4UCE2 (last visited March 17, 2020)

[6]   *See*     https://www.youngliving.com/en_us/products/valerian-essential-oil *compared to* https://www.edensgarden.com/products/valerian (last visited March 17, 2020)

d.  Young Living charges consumers $30.26 for peppermint essential oil, while

Target charges $6.50.[7]

19.     As shown in the image below, Young Living prominently labels each of the

Products as being "100% Pure, Therapeutic-Grade":



20.     To support its claims that the Products are "therapeutic," Young Living makes a

number of specific claims that the Products confer a physical, mental, or medicinal benefit.

21.     This includes claims that the Products:

---

[7]  *See*  https://www.youngliving.com/en_us/products/peppermint-essential-oil  *compare to*
https://www.target.com/p/olivia-care-100-pure-peppermint-essential-oil-15ml/-/A-51244036

- Will calm or relax consumers when applied or diffused, such as: Dragon Time "can help promote feelings of stability and calm during occasional times of moodiness"[8] and Lavender can "ease your occasional nervous tension"[9];

- Will help relieve consumers' feelings of anxiety when applied (or diffused), such as: Bergamot Oil "[m]ay help relieve tension during times of occasional stress"[10];

- Will help consumers sleep, such as Sleepylze "promotes feelings of relaxation and tranquility for restful sleep ... and a peaceful send-off to dreamland"[11] and Freedom which "may help with occasional sleeplessness or restlessness."[12];

- Will help consumers breathe, such as RC oil which "creates the feeling of normal clear breathing and a refreshing respiratory experience"[13];

- Will bring users clarity, focus, or alertness when applied (or diffused) as directed, such as: "Brain Power is a blend of essential oils . . . to promote a sense of clarity and focus when used aromatically"[14];

---

[8] https://www.youngliving.com/en_US/products/dragon-time-essential-oil-blend#:~:text=Dragon%20Time%E2%84%A2%20is%20a,during%20occasional%20times%20of%20moodiness (last visited August 19, 2020).

[9] https://www.youngliving.com/blog/lavender-essential-oil-uses-and-benefits/ (last visited March 17, 2021).

[10] https://www.youngliving.com/en_US/products/bergamot-essential-oil (last visited August 19, 2020).

[11] https://www.youngliving.com/en_us/products/kidscents-sleepyize-5ml (last visited March 17, 2021)

[12] https://www.youngliving.com/en_us/products/freedom-5ml (last visited March 17, 2021)

[13] https://www.youngliving.com/en_us/products/rc-essential-oil-blend (last visited March 17, 2021)

[14] https://www.youngliving.com/en_US/products/brain-power-essential-oil-blend#:~:text=Brain%20Power%E2%84%A2%20is%20a,and%20focus%20when%20used%20aromatically (last visited August 19, 2020).

- Can be used to treat symptoms associated with depression, such as: Davana oil "boosts your positive outlook on life"[15] and One Heart "encourages a bright outlook on life"[16];

- "Reduce[] feelings of occasional stress"[17]; and

- Will help consumers increase or maintain their energy levels when applied (or diffused) as directed, such as: Peppermint "helps to maintain energy levels when applied topically."

22.     Young Living had a specific definition of what it means when it identifies one of it oils as being "Young Living Therapeutic Grade."  On Young Living's website, the company's product marketing staff instructs its member-sales people:

> When describing therapeutic-grade essential oils to someone else, it's important to relay that *every essential oil Young Living distills or sources has the highest naturally-occurring blend of constituents to maximize the desired effect.*[18]

That same page goes on to say: "The YLTG promise is a bold statement—but you can share our products with confidence, knowing that Young Living truly has the experience to produce essential oils that work."  Although Young Living appears to have removed this reference from its website since January 13, 2021, Defendant has not removed references in its various blogs and other

---

[15] https://www.youngliving.com/en_US/products/davana-essential-oil (last visited August 19, 2020).

[16] https://www.youngliving.com/en_us/products/one-heart-5ml (last visited March 17, 2021)

[17] https://www.youngliving.com/en_US/products/davana-essential-oil (last visited August 19, 2020).

[18] https://www.youngliving.com/blog/what-is-young-living-therapeutic-grade/ (last visited January 13, 2021) (emphasis in original). After filing this action, Young Living removed this page from its website, a copy of the original is attached as Exhibit A.

websites.  A May 9, 2019 re-post on the D. Gary Young Blog maintained by Young Living[19]

entitled "Eight Ways to Find Pure, Therapeutic-Grade Essential Oils" states:

> Pure, therapeutic-grade essential oils can have therapeutic effects on
> their users.  The purer the oils, the stronger the
> benefits…Peppermint essential oil should contain between 38 and
> 47 percent menthol to be therapeutic…Look for a guarantee of
> therapeutic grade, which Young Living provides.[20]

23.     That blog posting the asks the question: "If an oil is labeled '*pure, therapeutic-

grade,*' can I be sure that it is?" and in the guise of "Gary" the blog answers: "**NO!  Look for a**

**guarantee of therapeutic-grade which Young Living provides."**  The blog posting goes on to

describe how Young Living's guarantee of therapeutic-grade oils is superior to all other

"therapeutic-grade" promises because Mr. Young "developed Young Living's very high standards

for therapeutic-grade essential oils."[21]  This guarantee is what Young Living claims separates the

company's products labeled "therapeutic-grade" from its competitors' "therapeutic-grade"

products and is one of the major reasons Young Living is able to charge a premium.

24.     Young Living directs these and other representations and warranties about the

health-related benefit claims of its Products to consumers, like Plaintiff and the members of the

---

[19] The D. Gary Young blog has the Young Living Essential Oils branding at the bottom, and
includes the following at the top: "EDITOR'S NOTE: Since Gary Young's passing, we have been
taking stock of the tremendous contributions he made to the world by revisiting his presentations,
such as this fascinating blog post series, originally published in 2010, that recounts Gary's ongoing
discoveries about pure essential oils, their properties, and their production."
https://dev.dgaryyoung.com/blog/2019/part-13-finding-pure-essential-oils/ (last accessed March
30, 2021).  A copy of this blog posting is attached as Exhibit B.
[20]    https://dev.dgaryyoung.com/blog/2019/part-13-finding-pure-essential-oils/ (last accessed
March 30, 2021)(Exhibit B)
[21]    https://dev.dgaryyoung.com/blog/2019/part-13-finding-pure-essential-oils/ (last accessed
March 30, 2021) (Exhibit B)

Classes, and Young Living intends that Plaintiff and members of the Classes read and rely on its representations and warranties.

25.     However, contrary to these representations and warranties, the Products actually provide no scientifically proven health-related benefits, leaving Plaintiff and Members of the Classes having paid a premium for a Product or Products that failed to provide the supposedly guaranteed "therapeutic" benefits.

26.     Indeed, in a recent proceeding before the National Advertising Division (NAD), the advertising industry's robust self-regulatory body which offers a vigorous dispute resolution process for advertisers and is charged with independently monitoring and reviewing national advertising for truthfulness and accuracy, Young Living was challenged as to the truthfulness and accuracy of its health-related claims about the Products, particularly that they are "therapeutic."[22]

27.     In that proceeding, Young Living failed to provide any competent and reliable scientific evidence to support its health-related claims about the Products, including that they are "therapeutic."

28.     As a result of the proceeding (and subsequent failed appeal), the NAD directed, and Young Living agreed, to permanently discontinue its claim that the Products are "therapeutic.."

29.     In addition, Young Living agreed to permanently discontinue several other therapeutic-related claims about the Products, including that they :

- Promote feelings of calm and relaxation;

- Help consumers sleep;

- Reduce your anxiety;

---

[22]     https://bbbprograms.org/media-center/decisions-details/nad-recommends-that-young-living-essential-oils-discontinue-therapeutic-grade-and-health-related-claims-for-its-essential-oils-advertiser-to-appeal (last visited January 13, 2020).

- Provide clarity, focus and/or alertness;

- Energize;

- Improvers consumers' mood and increase their motivation.

30. Defendant, a billion-dollar company, has the resources to conduct its own testing, but did not. Defendant had no reasonable basis to believe the truthfulness and accuracy of its health-related claims about the Products; knew that the health-related claims about the Products were not accurate; and knew that its labeling, advertising and/or marketing was false and misleading to consumers.

31. On or about November 24, 2020, a panel of the National Advertising Review Board ("NARB"), the appellate advertising law body for the NAD, affirmed the earlier NAD ruling.[23] Like the NAD before it, the NARB ruled that Young Living should discontinue "therapeutic grade" claims for its "essential oils" because it was "unsupported," as well as other unsupported health and wellness benefit claims.

32. Following the NARB decision, Young Living purportedly stated that it will comply with NARB's decision. Nevertheless, Young Living's website continues to reference "therapeutic-grade essential oils" in its marketing.[24] Moreover, bottles of various Young Living products deceptively labeled as "therapeutic-grade essential oils" can still be purchased through

---

[23]   https://bbbprograms.org/media-center/newsroom/narb-therapeutic-grade-essential-oils-claim (last visited January 13, 2020).

[24]   *E.g.,*   https://www.youngliving.com/blog/the-adventure-of-learning-and-using-essential-oils-effectively-part-1/ (last visited March 30, 2021), a copy of this page is attached as Exhibit C; https://www.youngliving.com/blog/what-is-young-living-therapeutic-grade/ (last visited January 13, 2021) (Exhibit A).

numerous third-party vendors.[25]  Young Living's YouTube channel repeatedly shows the Product with "therapeutic-grade" on the bottles: [26]



*Young Living's Marketing and Sale of the Products Violates Federal Law*

---

[25]  https://www.amazon.com/Bergamot-Essential-15ml-Young-Living/dp/B00767ELUA  (last visited   January   13,   2021);   https://www.amazon.com/Brain-Power-Essential-Young-Living/dp/B0016C8QOS (last visited January 13, 2021); https://www.amazon.com/Young-Living-Essential-Ravintsara-Theraputic/dp/B071P2946H   (last   visited   January   13,   2021); https://www.amazon.com/Frankincense-Essential-Young-Living-Oils/dp/B00194GUZA   (last visited   January   13,   2021);   https://www.amazon.com/PanAway-Essential-Young-Living-Oils/dp/B00CDD4FQW   (last   visited   January   13,   2021);   https://essentialoil-life.com/products/young-living-davana-essential-oil-5ml?variant=29521493983266&utm_medium=cpc&utm_source=google&utm_campaign=Google%20Shopping&gclid=Cj0KCQiA0fr_BRDaARIsAABw4EuDAyQwv0rMGneP41vaK5oaQSeQ9ZCuz22kxtB8qh5TNmU5JVOW_4AaArzpEALw_wcB   (last   visited   January   13,   2021); https://www.911healthshop.com/products/young-living-dragon-time-essential-oil-15-milliliter?variant=32190621876314&dfw_tracker=86746-32190621876314&gclid=Cj0KCQiA0fr_BRDaARIsAABw4EsEHpVuYTgCvHqsDFwP1oTmthxGdtUeMYftgxle96u6goTfjIxNNTsaAv9zEALw_wcB (last visited January 13, 2021).
[26] https://www.youtube.com/user/youngliving007
[27]     https://youtu.be/kjR4ayrFQWQ   see   also   https://youtu.be/wuqYhWV8KyE   and https://youtu.be/IZtxNX7E3Xg (last accessed March 18, 2021)

33.     Section 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

34.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

35.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Products are either "foods" or "drugs" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. §§ 55(b), (c).

36.     Under these provisions, companies must have a reasonable basis for making objective product claims, including claims that a product can treat specific conditions before those claims are made.[28]

37.     As alleged herein, Young Living has represented the Products confer a healthy or medicinal benefit.

38.     These representations are false or misleading or were not substantiated at the time the representations were made.

39.     Therefore, the making of the representations as set forth in Paragraphs 19-26 of this Complaint constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52.

40.     Relatedly, Young Living's labeling, advertising, and marketing of the Products violates the Federal Food, Drug, and Cosmetic Act (the "FDCA Act"), 21 U.S.C. § 321(g)(1)(B).

---

[28] See Advertising Substantiation Policy Statement, appended to *Thompson Medical Co.*, 104 F.T.C. 648, 839 (1984), aff'd, 791 F.2d 189 (D.C. Cir. 1986) ("Advertising Substantiation Policy Statement").

41.     The Products are promoted for conditions that cause them to be drugs under the Act because, as alleged herein, they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease.

42.     The intended use of a product may be determined by, among other things, its labeling, advertising, and the circumstances surrounding its distribution, 21 C.F.R. § 201.128.

43.     Moreover, the Products are also "new drugs" under section 201(p) of the Act (21 U.S.C. § 321(p)), because they are not generally recognized as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling.

44.     Under sections 301(d) and 505(a) of the Act (21 U.S.C. §§ 331(d) and 355(a)), a new drug may not be introduced or delivered for introduction into interstate commerce unless an FDA-approved application is in effect for the drug.

45.     FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective.

46.     As alleged herein, and as found by the NAD and NARB, Young Living has no competent and reliable scientific evidence to support its health-related claims about the Products , to the contrary, Young Living knew or should have known multiple scientific studies contradict Young Living's health-related claims.

47.     On information and belief, there is no FDA-approved application in effect for the Products.

48.     Because there is no FDA-approved application in effect for the Products, Defendant's labeling, advertising, marketing, and sale of the Products violates the FDCA Act.

***Young Living Has Previously Falsely Marketed its Essential
Oils as Conferring Beneficial Health Effects***

49.     This is not the first time Young Living has been admonished for falsely marketing

its essential oils products.

50.     In September of 2014, the FDA issued a warning letter to Young Living because it

promoted its essential oils for conditions such as, but not limited to, viral infections (including

Ebola), Parkinson's disease, autism, diabetes, hypertension, cancer, insomnia, heart disease, post-

traumatic stress disorder (PTSD), dementia, and multiple sclerosis, that are not amenable to self-

diagnosis and treatment by individuals who are not medical practitioners.[29]

***Young Living Continues to Knowingly Market the Products Falsely and Misleadingly***

51.     Through at least March 18, 2021, Defendant continues to knowingly use the false

and misleading information to  label, market, and advertise, and/or sell the Products to the general

public as conferring a healthy or medicinal benefit, including that they are "therapeutic." The only

conceivable purpose for falsely and deceptively making these claims about the Products is to

stimulate sales and enhance Defendant's profits.

52.     Despite this claim, at the NAD hearing Young Living did not produce a single

scientific study on its own essential oils and the NAD found, "in the absence of specific product

testing (or evidence that Young Living's essential oils have not only the same ingredient, but that

such ingredients appear in the products in the same dosage and formulation and that the route of

administration is the same as the underlying tests reasonably permitting extrapolation of results

from the studies to the claims made), NAD concluded that …claims its essential oils are

"therapeutic grade" and confer promised physical and mental benefits are unsubstantiated."

---

[29] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/young-living-09222014 (last visited December 2, 2020).

15

53.     In 2012 the multidisciplinary peer reviewed scientific journal Maturitas, published the article "Aromatherapy for health care: An overview of systematic reviews."[30] The article provided "an overview of systematic reviews evaluating the effectiveness of aromatherapy." The authors evaluated the "methodological quality of all systematic reviews" of "201 potentially relevant publications" of which only 10 met the authors' "inclusion criteria" as most of the scientific studies on aromatherapy and essential oils were "of poor methodological quality." The researchers evaluated the science behind claims that essential oils could be used to treat "hypertension, depression, anxiety, pain and dementia," and concluded "the evidence is not sufficiently convincing that aromatherapy is an effective therapy for any condition."[31]

54.     Moreover, a September 2019 report prepared by the Evidence Synthesis Program Center for the Department of Veterans Affairs[32] reviewed studies which addressed the effectiveness of aromatherapy with essential oils and determined that there is unclear or insufficient evidence to establish that inhaled essential oils are an effective therapeutic treatment for "anxiety, depressive symptoms, nausea, pain, psychological symptoms in women aged 45+, hypertension" and that the authors had "low confidence" in evidence that essential oils are an effective therapeutic treatment for "sleep and stress."[33] The authors further note, that "despite their

---

[30] M.S. Lee, J. Choi, P. Posadzki, E. Ernst, Aromatherapy for health care: An overview of systematic reviews, Maturitas. 71 (2012) 257–260.
[31] *Id.*
[32] M. Freeman, C. Ayers, C. Peterson, D. Kansagara, Aromatherapy and Essential Oils: A Map of the Evidence, Washington, DC: Evidence Synthesis Program, Health Services Research and Development Service, Office of Research and Development, Department of Veterans Affairs. VA ESP Project #05-225; 2019. Available at https://www.hsrd.research.va.gov/publications/esp/aromatherapy.cfm.
[33] *Id.* p. 5

increasing use, little is known about the benefits and risks associated with the use of [essential oils]".[34]

55.     Other studies available are equally unavailing in support Defendant's claims that the Products are "therapeutic."[35]

56.     Indeed, Defendant knew or should have known when it was guaranteeing that its products were "100% Pure, Therapeutic-Grade" that the scientific evidence does not support its labeling of the Products as therapeutic and that the Products do not provide the numerous health and wellness benefits Defendant advertises.

57.     No reasonable consumer would have paid a premium for the Products if they knew they did not provide the promised therapeutic benefits.

58.     Most consumers are unable to verify that products such as Defendant's are accurately labeled.   Therefore, consumers are particularly vulnerable to these kinds of false and deceptive labeling, marketing, and advertising practices.

59.     Because of Defendant's knowingly deceptive labeling, marketing, and advertising practices, consumers were fraudulently induced to purchase and pay a premium for the Products.

*Plaintiff Relied Upon the Products' Label*
*to Purchase and Use the Products*

60.     Plaintiff was herself a victim of Defendant's mislabeling of the Products.

_____

[34] *Id.* p. 9
[35] *See e.g.* B. Cooke, E. Ernst, "Aromatherapy: a systemic review" British Journal of General Practice, 2000, 50, 493-496 "Based on a critical assessment of the six studies relating to relaxation, the effects of aromatherapy are probably not strong enough for it to be considered for the treatment of anxiety.   The hypothesis that it is effective for any other indication is not supported by the findings of rigorous clinical trials."

61.     In the last four years, and specifically on or around February 2020, Plaintiff purchased the Products online.  These products included, but were not limited to, frankincense, lavender, peppermint, eucalyptus, cinnamon and orange Young Living essential oils.

62.     Before purchasing the Products, Plaintiff reviewed the labels' claim that they were "therapeutic-grade" and that they would provide a physical, mental, or medicinal benefit if used. Plaintiff purchased the Products believing these claims that they would confer a physical, mental, or medicinal benefit, as stated on the bottle and in Defendant's advertising and promotional materials.

63.     In addition to relying on the guarantee of the oils being "therapeutic-grade", Plaintiff viewed and relied on, *inter alia*, Defendant's claim(s) or claims substantially similar to the following:

- Defendant's frankincense oil "promotes feelings of relaxation & tranquility";

- Defendant's lavender oil "promote[s] feeling of calm and fight[s] occasional nervous tension" and has "balancing properties that calm the mind and body";

- Defendant's peppermint oil "helps to maintain energy levels when applied topically.

64.     "Plaintiff purchased and used the products in the manner Defendant instructed her to, either on the Products label and/or in the marketing and advertising materials included with her purchase and/or as seen by the Plaintiff on Defendant's website.

65.     Plaintiff would not have purchased and used the Products had she known that they did not provide the promised benefits, or at the very least she would not have purchased the Products at the inflated price Young Living charged.

66.     Plaintiff is in the same Class as all other consumers who purchased Defendant's Products during the relevant time period.  Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations in respect to the Products.  Plaintiff and Class Members would have purchased other oils, if any at all, if they had not been deceived by the misleading and deceptive labeling, marketing, and advertising of the Products by Defendant.

## CLASS ACTION ALLEGATIONS

67.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

68.     Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.  The class definition(s) may depend on the information obtained through discovery.  Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

> **National Class:**  All persons within the United States who purchased essential oil products labeled as "therapeutic" from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

> **Consumer Fraud Multi-State Class:**  All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington, and Wisconsin who purchased essential oil products labeled as "therapeutic" from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").[36]

---

[36] The New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349, *et seq*., makes unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" the State of New York.  The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged

**New York Sub-Class:** All persons in New York who purchased essential oil products labeled as "therapeutic" from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "New York Sub-Class").

69.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, Defendant's officers, directors, and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

70.     Plaintiff reserves the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

71.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

72.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to hundreds of thousands. The number of members of the Classes is presently unknown to Plaintiff but may be ascertained from Defendant's books and records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

---

herein: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201 et seq.); Illinois (815 ILCS 505/1, et seq.), Massachusetts (Mass. Gen. Laws Ch. 93A et seq.); Michigan (Mich. Comp. Laws § 445.901 et seq.); Minnesota (Minn. Stat. §§ 325F.68, et seq.); Missouri (Mo. Rev. Stat. § 407.010 et seq.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, et seq.) and Wisconsin (WIS. STAT. § 100.18, et seq.).

73.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2)
and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and
predominate over questions affecting only individual members of the Classes.  Such common
questions of law or fact include, but are not limited to, the following:

    a.    Whether the Products are "therapeutic," as claimed on its label;

    b.    Whether Defendant had a reasonable basis for claiming that Products are
"therapeutic";

    c.    Whether the Products confer a healthy or medicinal benefit;

    d.    Whether Defendant knew or should have known that its claims that Products
confer a healthy or medicinal benefit was contradicted by scientific studies;

    e.    Whether the marketing, advertising, packaging, labeling, and other
promotional materials for the Products are deceptive;

    f.    Whether Defendant's actions violate the state consumer fraud statutes
invoked herein;

    g.    Whether Plaintiff and the members of the Classes were damaged by
Defendant's conduct;

    h.    Whether Defendant was unjustly enriched at the expense of Plaintiff and
Class Members; and

    i.    Whether Plaintiff and Class Members are entitled to injunctive relief.

74.    Defendant engaged in a common course of conduct giving rise to the legal rights
Plaintiff seeks to enforce on behalf of herself and the other Members of the Classes. Similar or
identical statutory and common law violations, business practices, and injuries are involved.
Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous
common questions that dominate this action.

75.    **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are
typical of the claims of the other Members of the Classes because, among other things, all Members

of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Classes.

76. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Members of the Classes she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and she will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

77. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

78. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products as

labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised health or medicinal benefits.

79.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if Members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### Count I
### Violation of the State Consumer Fraud Acts
### (On Behalf of the Consumer Fraud Multi-State Class)

80.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

81.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

82.     Plaintiff and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the

Consumer Fraud Multi-State Class because Plaintiff and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

83.     Defendant engaged in unfair and/or deceptive conduct, including, but not limited to the following:

    a.   Representing on their label that the Products are "therapeutic," with no reasonable basis to do so and when, in fact, they are not; and

    b.   Representing that the Products confer a physical, health and/or medicinal benefits when, in fact, they do not and/or Young Living had no reasonable basis to believe they did have such benefits.

84.     Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

85.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

86.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**Count II**
**Violation of the New York GBL § 349**
**(In the Alternative to Count I and on behalf of Plaintiff and the New York Sub-Class)**

87.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

88.    New York General Business Law §349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

89.    The conduct of Defendant alleged herein constitutes recurring "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Sub-class members seek monetary damages and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, marketing, and promoting the Products.

90.    There is no adequate remedy at law.

91.    Defendant misleadingly, inaccurately, and deceptively presented the Products to consumers. Defendant's improper consumer-oriented conduct in advertising the Products by representing on their label that the Products are "therapeutic," with no reasonable basis to do so and when, in fact, they are not; and representing that the Products confer a physical, health and/or medicinal benefits when, in fact, they do not and/or Young Living had no reasonable basis to believe they did have such benefits—is misleading in a material way in that it, inter alia, induced Plaintiff and New York Sub-class members to seek out and become consumers of Young Living when they otherwise would not have.

92.    Defendant engaged in unfair, deceptive, fraudulent and/or unconscionable acts or practices in the conduct of trade or commerce by making false or misleading statements regarding the "therapeutic" nature of the Products and the physical, health and/or medicinal benefits of the Products.

93.    Defendant intended that Plaintiff and each of the other Members of the New York Sub-class would rely upon its unfair, deceptive, fraudulent and/or unconscionable acts or practices

in the conduct of trade or commerce such that a reasonable person would in fact be misled by this deceptive conduct as described above.

94.     Defendant nonetheless proceeded with the conduct alleged herein even though it knew or reasonably should have known that the Products are not "therapeutic" and did not have physical, health and/or medicinal benefits.

95.     Information regarding the true efficacy of the Products was known or should have been known to Young Living before it commenced labeling the Products as "therapeutic" and advertising the Products' physical, health and/or medicinal benefits, but was not reasonably known to Plaintiff and members of the New York Sub-class.

96.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

97.     Defendant's misrepresentations and omissions were material to Plaintiff and members of the New York Sub-class who relied or should be presumed to have relied upon those misrepresentations and omissions in purchasing and using the Products.  The reasonable consumer would have expected the Products to meet advertised specifications and would have expected the Products, among other things, to be "therapeutic" and provide physical, health and/or medicinal benefits.  Plaintiff and the New York Sub-class would not have purchased or used the Products had they known the truth about the Products.

98.     Plaintiff and the New York Sub-class members have been injured by, inter alia, expending time and resources to seek out and obtain the Products, paying a premium for the Products after Defendant led them to believe that the Products are "therapeutic" and conferred physical, health and/or medicinal benefits when the Products did not have such benefits.

Accordingly, Plaintiff and the New York Sub-class members did not receive what they bargained for.

99.     As a direct and proximate result of Defendant's misrepresentations and omissions, the Plaintiff and New York Sub-class members were damaged in an amount to be proven at trial.

100.    Defendant's deceptive and misleading practices constitute deceptive acts and practices in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiff and the New York Sub-class have been damaged thereby.

101.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Sub-class members are entitled to monetary and compensatory damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

102.    Plaintiff and New York Sub-class members seek damages, including treble damages, under GBL § 349.

103.    By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of New York General Business Law § 349, and Defendant is liable to Plaintiff and the New York Sub-class members for the damages they have suffered as a result of Young Living's actions. The amount of such damages is to be determined at trial, but not be less than $6,000,000,000.00. GBL § 349(h), which is approximately Young Living's sales during the last six years, if not more.[37]

---

[37]     https://www.heraldextra.com/business/local/young-living-posts-third-billion-dollar-growth-year-techstars-startup-weekend-free-home-maintenance-class/article_cb7bd699-3be2-59c3-ada1-aa062c801648.html#:~:text=Young%20Living%20Essential%20Oils%2C%20the,over%20the%20last%20five%20years. "Young Living Essential Oils, "continues to experience growth as the company announced that its 2017 sales surpassed $1.5 billion. The company has surpassed $1 billion in sales in each of the last three years and its revenues have grown 800 percent over the last five years. The company has experienced a 34 percent increase in 2018 year-to-date."

**Count III**
**Violation of the New York GBL § 350**
**(In the Alternative to Count I and on behalf of Plaintiff and the New York Sub-Class)**

104.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

105.   N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

106.   N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.   In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

107.   Defendant misleadingly, inaccurately, and deceptively marketed and advertised the Products to consumers.  Defendant's marketing and advertisements contain untrue and materially misleading statements concerning the Products because, *inter alia*, they mislead and misrepresent the Products as "therapeutic" and conferring physical, health and/or medicinal benefits. Defendant's improper consumer-oriented conduct—including advertising of the Products—is misleading in a material way in that it, inter alia, induced Plaintiff and New York Sub-class members to seek out and become a consumer of the Products when they otherwise would not have.

108.   Defendant engaged in unfair, deceptive, fraudulent and/or unconscionable acts or practices in the conduct of trade or commerce by making false or misleading statements regarding

the efficacy of the Products and not advising consumers that the Products were not "therapeutic" and would not, in reality, confer physical, health and/or medicinal benefits.

109.    Indeed, in a recent proceeding before the NAD, Young Living failed to provide any competent and reliable scientific evidence to support its health-related claims about the Products, including that they are "therapeutic."

110.    Defendant nonetheless proceeded with the conduct alleged herein even though it knew or reasonably should have known that the Products are not "therapeutic" and would not provide physical, mental, or medicinal benefits if used.  Information regarding the true efficacy of The Products was known to Defendant but was not reasonably known to Plaintiff and members of the New York Sub-class.

111.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

112.    Plaintiff and members of the New York Sub-class relied or should be presumed to have relied upon Defendant's misrepresentations and omissions in purchasing and using the Products.  The Plaintiff and the New York Sub-class members would not have purchased or used the Products had they known the truth about the Products.

113.    Plaintiff and the New York Sub-class members have been injured by, inter alia, expending time, money and resources to seek out and obtain the Products, paying, directly or indirectly, in whole or in part, for the Products, and after Defendant lead them to believe that the Products are "therapeutic" and conferred physical, health and/or medicinal benefits. Accordingly, Plaintiff and the New York Sub-class members did not receive what they bargained for.

114.     As a direct and proximate result of Defendant's misrepresentations and omissions, the Plaintiff and members of the New York Sub-class were damaged in an amount to be proven at trial.

115.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

116.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and marketing willfully, wantonly, and with reckless disregard for the truth.

117.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  All consumers that buy the Products were and continue to be exposed to Defendant's material misrepresentations.

118.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Sub-class members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

119.     Plaintiff and New York Sub-class members seek damages, including treble damages, under N.Y. Gen. Bus. Law § 350.

**Count IV**
**Violation Of New York GBL § 350-A(1)**
**On Behalf Of Plaintiff And The Class and/or New York Subclass**

120.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

121.     N.Y. Gen. Bus. Law § 350-a(1) expressly covers material omissions:

> In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations

30

> made by statement, word, design, device, sound or any combination
> thereof, but also the extent to which the advertising fails to reveal
> facts material in the light of such representations with respect to the
> commodity or employment to which the advertising relates under
> the conditions proscribed in said advertisement, or under such
> conditions as are customary or usual…

122.   Defendant's marketing and advertising contains misleading and/or unfair material omissions concerning the Products.  The marketing and advertising for the Products omit that the Products are not "therapeutic" and do not impart physical, health and/or medicinal benefits.

123.   By its omissions of the facts regarding the Products, Defendant's marketing and advertising of the Products was misleading, inaccurate, and deceptive because, inter alia, it misleads consumers into believing that an individual purchasing the Products would receive "therapeutic" results and physical, health and/or medicinal benefits.

124.   Defendant's improper consumer-oriented conduct was misleading by omission in a material way in that it, inter alia, induced Plaintiff and New York Sub-class members to seek out and become a consumer of the Products when they otherwise would not have.

125.   Defendant engaged in unfair, deceptive, fraudulent and/or unconscionable acts or practices in the conduct of trade or commerce by acts that rendered its marketing and advertising false and misleading, including because Defendant failed to advise consumers that the Products are not "therapeutic" and would not confer physical, health and/or medicinal benefits.

126.   In a recent proceeding before the National Advertising Division (NAD), the advertising industry's robust self-regulatory body which offers a vigorous dispute resolution process for advertisers and is charged with independently monitoring and reviewing national advertising for truthfulness and accuracy, Young Living was challenged as to the truthfulness and accuracy of its health-related claims about the Products, particularly that they are "therapeutic."

In that proceeding, Young Living failed to provide any competent and reliable scientific evidence to support its health-related claims about the Products, including that they are "therapeutic."

127.   Defendant nonetheless proceeded with the conduct alleged herein even though it knew or reasonably should have known that the Products did not confer the "therapeutic" physical, health and/or medicinal benefits it advertised.

128.   Information regarding the true efficacy of the Products was known to Defendant but was not reasonably known to Plaintiff and members of the New York Sub-class.

129.   Defendant made its omissions regarding the Products' actual efficacy willfully, wantonly, and with reckless disregard for the truth.

130.   Defendant's marketing and advertising of the Products induced the Plaintiff and New York Sub-class members to seek out and use the Products.  Plaintiff and members of the New York Sub-class relied or should be presumed to have relied upon Defendant's misrepresentations and omissions regarding the Products.  Plaintiff and New York Sub-class members would not have purchased or used the Products had they known the truth about the Products.

131.   Plaintiff and the New York Sub-class members have been injured by, inter alia, expending time, money and resources to seek out and obtain the Products, paying, directly or indirectly, in whole or in part, for the Products, after Defendant lead them to believe the Products had "therapeutic" and physical, health and/or medicinal benefits.  Accordingly, Plaintiff and the New York Sub-class members did not receive what they bargained for.

132.   As a direct and proximate result of Defendant's misrepresentations and omissions, the Plaintiff and members of the New York Sub-class were damaged in an amount to be proven at trial.

133.    Defendant's dissemination of advertising containing material misrepresentations and omissions of fact constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

134.    Defendant's material misrepresentations and omissions of fact, as described in this Complaint, were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers of the Products were and continue to be exposed to Defendant's material misrepresentations and omissions.

135.    Plaintiff and New York Sub-class members relied on Defendant's advertising, which was deceptive, false, and contained material misrepresentations and omissions.

136.    Plaintiff and New York Sub-class members seek damages, including treble damages, under GBL § 350-a(1).

137.    As a result of Defendant's false and misleading advertising, the Plaintiff and New York Sub-class members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### Count V
### Breach of Express Warranty on Behalf of Plaintiff and the Class

138.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

139.    Young Living provided the Plaintiff and members of the Class an express warranty of fact, in the form of its labeling, marketing and advertising, affirming and representing that its Products are therapeutic and impart physical and medicinal benefits.

140.    This affirmation of fact was not couched as "belief" or "opinion," and was not a "generalized statement[] of quality not capable of proof or disproof."

A-40

141.    This affirmation of fact became part of the basis for the bargain and was material to the transactions of the Plaintiff and of members of the Class.

142.    Plaintiff and members of the Class reasonably relied upon Young Living's affirmation of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to purchase the Products. Within a reasonable time after they knew or should have known of Young Living's breach, Plaintiff—on behalf of herself and the other members of the Class—placed Young Living on notice of its breach, giving Young Living an opportunity to cure its breach, which it refused to do.

143.    Contrary to Young Living's affirmation of fact, Young Living breached the express warranty because its product, in direct contravention to its advertised claims, in fact does not impart a physical, medicinal or health benefit, thereby also breaching the following states' warranty laws, including:

    a.   CAL. COMM. CODE § 2313;

    b.   FLA. STAT. ANN. § 672.313;

    c.   ILL. ST. CH. 810 § 5/2-313;

    d.   MASS. GEN. LAWS ANN. 106 § 2-313;

    e.   MICH. COMP. LAWS ANN. § 440.2313;

    f.   MINN. STAT. ANN. § 336.2-313;

    g.   N.H. REV. STAT. § 382-A:2-313;

    h.   WASH. ANN. 62A.2-313;

    i.   WIS. STAT. ANN. § 402.313.

144.    As a direct and proximate result of Young Living's breaches of express warranty, Plaintiff and the other members of the Class were damaged in amounts to be proven at trial.

**Count VI**
**Breach of Implied Warranty Of Merchantability**
**on Behalf of Plaintiff and The Class**

145.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

146.    Young Living is in the business of manufacturing, producing, distributing, and selling biological products, including the Products..

147.    Under the Uniform Commercial Code's implied warranty of merchantability, Young Living warranted to Plaintiff and the members of the Class that the Products had therapeutic, medicinal and health benefits.

148.    Young Living breached the implied warranty of merchantability in that the Products do not have therapeutic qualities and do not confer medicinal or health benefits and therefore materially deviates from the product description in Young Living's labeling, marketing and advertising of the Products, and reasonable consumers expected the Products to conform with Young Living's representations regarding the Products and would not have purchased the Products if they knew these representations were not accurate.

149.    Young Living breached the implied warranty of merchantability. The Products do not disclose that the Products are not proven to be therapeutic, that the Products do not confer health or medicinal benefits.

150.    Reasonable consumers expecting Products that conform to the representations related to the Products by Young Living would not accept the Products if they knew the truth about its lack of efficacy and that the Products do not confer therapeutic, medicinal or health benefits.

151.    Young Living breached the implied warranty of merchantability in that the Products do not conform to the promises or affirmations of fact made on the Product's label and in the Products' marketing, advertising or literature.

152.    Within a reasonable time after the Plaintiff discovered that the Products are not what they purport to be, Plaintiff notified Young Living of such breach.

153.    The inability of the Products to confer the therapeutic, medicinal and health benefits promised by Young Living was wholly due to Young Living's fault and without Plaintiff's fault or neglect and was solely due to Young Living's manufacture and distribution of the Products to the public.

154.    At all times relevant to this action, Young Living has breached its implied warranty of merchantability regarding the Products in violation of state implied warranty laws, including:

   a.   CAL. COMM. CODE § 2314;

   b.   FLA. STAT. ANN. § 672.314;

   c.   ILL. ST. CH. 810 § 5/2-314;

   d.   MASS. GEN. LAWS ANN. CH. 106 § 2-314;

   e.   MICH. COMP. LAWS ANN. § 440.2314;

   f.   MINN. STAT. ANN. § 336.2-314;

   g.   R.I. GEN. LAWS ANN. § 6A-2-314;

   h.   WASH. REV. CODE ANN. § 62A.2-314;

   i.   WIS. STAT. ANN. § 402.314; and

155.    As a result of the foregoing, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

A-43

**Count VII**
**Breach of Implied Warranty Of Fitness for a Particular Purpose on Behalf of Plaintiff and The Class**

156.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

157.    Plaintiff and other members of the Class sought out and used the Products with the specific purpose of benefitting from their therapeutic, medicinal or health benefits.

158.    Young Living knew or had reason to know that Plaintiff and other members of the Class were buying the Products with the specific purpose of obtaining these therapeutic, medicinal and health benefits.   Young Living knew this because it made this promise in its labeling, marketing, advertising and literature to prompt consumers to demand and obtain the Products at a premium price.

159.    Plaintiff and other members of the Class, intending to obtain therapeutic, medicinal and/or health benefits, relied on Young Living to select Products to fit the specific, intended use.

160.    Young Living held itself out as having particular knowledge of the Products values and content.

161.    The reliance by Plaintiff and other members of the Class on Young Living to select Products to fit the particular purpose was reasonable given Young Living's statements and representations in its advertising, marketing and literature.

162.    The reliance by Plaintiff and other members of the Class on Young Living to select Products to fit the particular purpose was reasonable given Young Living's particular knowledge of the product it manufactures and distributes.

163. At all times relevant to this action, Young Living has breached its implied warranty of fitness for a particular purpose regarding the Products in violation of states' implied warranty laws, including:

a.   CAL. COM. CODE § 2315

b.   FLA. STAT. § 672.315

c.   ILL. ST. CH. 810 § 5/2-315

d.   MASS. GEN. LAWS ANN. CH. 106 2 § 2-315

e.   MICH. COMP. LAWS ANN. § 440.2315

f.   MINN. STAT. § 325G.19

g.   N.H. REV. STAT. ANN. § 382-A:2-315

h.   N.Y. U.C.C. LAW § 2-314; 810

i.   R.I. GEN. LAWS ANN. § 6A-2-315

j.   WASH. REV. CODE ANN. § 62A.2-315

k.   WIS. STAT. ANN. § 402.315

164. As a result of the foregoing, Plaintiff and other members of the Class have been damaged in an amount to be determined at trial.

**Count VIII**
**In the *alternative* Unjust Enrichment**
**(On Behalf of the National Class and the New York Sub-Class)**

165. Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

166. Plaintiff brings this claim against Defendant on behalf of herself and the National Class and New York Sub-Class.

A-45

167. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

168. Plaintiff, on behalf of herself and Class members, brings a common law claim for unjust enrichment *in the alternative*.

169. Defendant's conduct violated federal and state consumer protection statutes by advertising, marketing and selling the Products while misrepresenting the Products as "therapeutic" and having physical, health and/or medicinal benefits and omitting material facts.

170. Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling the Products, which benefited and enriched Defendant at the expense of and to the detriment of Plaintiff and Class members. Defendant has thereby violated the fundamental principles of justice, equity, and good conscience.

171. Under common law principles of unjust enrichment, it is inequitable for Defendant to retain the financial benefits conferred by Plaintiff and the Class members from Defendant's sales of the Products.

172. Plaintiff and Class members seek disgorgement of all profits resulting from its sales of the Products and establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Count, respectfully requests that the Court enter judgment as follows:

A. For Count I: Declaring that this action is a proper class action, certifying the Consumer Fraud Multi-State Class as requested herein, designating Plaintiff

as Class Representative, and appointing the undersigned counsel as Class
Counsel for the Class;

B.  For Count II: Declaring that this action is a proper class action, certifying
the New York Sub-Class as requested herein, designating Plaintiff as Class
Representative, and appointing the undersigned counsel as Class Counsel
for the Class;

C.  For Count III: Declaring that this action is a proper class action, certifying
the New York Sub-Class as requested herein, designating Plaintiff as Class
Representative, and appointing the undersigned counsel as Class Counsel
for the Class;

D.  For Count IV: Declaring that this action is a proper class action, certifying
the New York Sub-Class as requested herein, designating Plaintiff as Class
Representative, and appointing the undersigned counsel as Class Counsel
for the Class;

E.  For Count V: Declaring that this action is a proper class action, certifying
the Classes as requested in Count V, designating Plaintiff as Class
Representative, and appointing the undersigned counsel as Class Counsel
for the Classes;

F.  For Count VI: Declaring that this action is a proper class action, certifying
the Classes as requested in Count V, designating Plaintiff as Class
Representative, and appointing the undersigned counsel as Class Counsel
for the Classes;

A-47

G.    For Count VII: Declaring that this action is a proper class action, certifying the Classes as requested in Count V, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

H.    For Count VIII: Declaring that this action is a proper class action, certifying the Classes as requested in Count V, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

I.    Enjoining Defendant from engaging in the unlawful conduct set forth herein;

J.    Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class;

K.    Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

L.    Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence if such amendment is needed for trial.

Dated: March 30, 2021                         Respectfully Submitted,

By: /s/ *Mason A. Barney*
**SIRI & GLIMSTAD LLP**
Aaron Siri
Mason A. Barney
200 Park Avenue, Seventeenth Floor

New York, New York 10166
Tel: (212) 532-1091
E: aaron@sirillp.com
E: mbarney@sirillp.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com

Gary E. Mason*
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Phone: 202.640.1160
Fax: 202.429.2294
gmason@masonllp.com

*Pro hac vice forthcoming*
*Attorneys for Plaintiffs and the Class*

42

# **<u>EXHIBIT A</u>**



YOUNG LIVING
ESSENTIAL OILS

THE *Lavender* LIFE

Essential Oils    DIY    Wellness    At Home    Beauty    Media    🔍

## What Is Young Living Therapeutic Grade?

I recently sent out an online survey through e-Newsletter asking distributors what they know about therapeutic-grade quality essential oils. Thank you for all your responses! Interestingly, the answers submitted were generally about the quality of essential oils, but the majority of responses did not clearly define "therapeutic grade."

When describing therapeutic-grade essential oils to someone else, it's important to relay that *every essential oil Young Living distills or sources has the highest naturally-occurring blend of constituents to maximize the desired effect.* This is our Young Living Therapeutic Grade™ (YLTG) promise.

For example: Have you ever wondered what makes clove essential oil Young Living Therapeutic Grade? Young Living's clove essential oil is distilled from the flower of the plant—unlike imitation clove oil that is distilled from the stem or leaf. While the clove stem and leaf are certainly less expensive to distill and have the same aroma as oil distilled from the flower, you will not find the highest amount of the naturally-occurring eugenol in essential oils that are distilled from these parts of the plant. Eugenol is the compound that gives clove oil the important antiseptic and anesthetic properties you and I have come to rely on in the Thieves products—to purchase a lesser quality clove oil would be denying these important therapeutic benefits.

I was recently speaking with Mary Lou, Young Living's essential oil sourcing specialist. She told me that many partner companies approach Young Living with their supply of clove but are turned away because the oil does not meet the high standards of YLTG set by Gary Young. Unfortunately, many of the rejected oils find their way to other essential oil companies.

As you can see, not every therapeutic-grade essential oil is the same. Only the right blend of naturally-occurring chemicals will produce a true YLTG essential oil. Knowing that the best clove oil comes from the clove flower can help you share the importance of the Young Living Therapeutic Grade standard. And when describing YLTG to someone else, it's important to relay that every essential oil Young Living distills or sources has the highest naturally-occurring blend of constituents to maximize the desired therapeutic effect.

The YLTG promise is a bold statement—but you can share our products with confidence, knowing that Young Living truly has the experience to produce essential oils that work. If you want lavender essential oil for calming, the YLTG standard guarantees our lavender oil will live up to everything you have heard about lavender's soothing qualities. Using a wintergreen essential oil blend for massage oil? Again, the YLTG standard ensures you will receive your personal desired effect.

I would love to hear your comments about how the Young Living Therapeutic Grade standard has worked for you.

—Toby Palmer, Product Marketing

September 10th, 2008 | Uncategorized | 2 Comments



Share This Story, Choose Your Platform!    f  ✖  P  ✉

### Related Posts





Quest: Take this magical quiz to find your mythological diffuser blend

6 eerie-sistible essential oil ideas for the spookiest time of year

It's go Thyme: 8 ways to use Thyme today



2 Comments    Young Living - US    🔒 Disqus' Privacy Policy    ● Login

♡ Recommend    ✖ Tweet    f Share    Sort by Newest ▾

Join the discussion...

LOG IN WITH          OR SIGN UP WITH DISQUS ⓘ

Ⓓ f ✖ G    Name

shane trammel  4 years ago
Just curious if this blog entry is considered compliant. I'm assuming since this blog post is here at Young Living that it is compliant.
∧ ∨ • Reply • Share ›

MedicineIsReal  12 years ago
I agree with the other comment, so many claiming therapeutic-grade and no one has the background, experiences or even the interest to prove it. Hats off to YL so one understands oils like this...
∧ ∨ • Reply • Share ›

✉ Subscribe   ✚ Add Disqus to your site   ⊘ Do Not Sell My Data          DISQUS

ORDERS: 1-800-371-3515        CONTACT US        VIRTUAL OFFICE        BECOME A MEMBER





RECENT AWARDS

CONTENT MARKETING AWARDS

CONTACT US

Email:
Member Services:
Thanksgiving Point Business Park
3125 Executive Parkway
Lehi, UT 84043

Subscribe Now

Copyright 2019 - Young Living Essential Oils | All Rights Reserved | Privacy Policy

A-51

# **EXHIBIT B**

**PART 1: RIGHT WAYS TO FIND PURE, THERAPEUTIC-GRADE ESSENTIAL OILS**

## EIGHT QUESTIONS TO ASK TO FIND THE BEST ESSENTIAL OILS











# **EXHIBIT C**



Case 5:21-cv-00071-BKS-ML   Document 21-3   Filed 09/30/21   Page 7 of 2

THE *Lavender* LIFE

Essential Oils    DIY    Wellness    At Home    Beauty    Media    🔍

## Part 1, The Adventure of Learning and Using Essential Oils Effectively



Using pure essential oils is more than just a moment of aromatherapy. It is a way of using the amazing gifts nature has given us to safely and effectively support the body's natural processes. Essential oils offer a natural way to experience these powerful benefits without needing an extensive education.

Here are a few basic guidelines to be aware of before starting your experience with essential oils:

1. Everyone's experience and response to the oils will vary depending on individual constitution and state of balance in the body. You may respond differently to the oils depending on your daily diet, exercise/activity levels, blood type, stress levels, and exposure to toxins.
2. Some individuals are more sensitive than others. Therefore, if you have never applied a particular oil directly to your skin, patch test it before use. Simply apply the oil on a small portion of your arm to determine your general response. Some oils—such as oregano, thyme, cinnamon bark, and cassia—are hotter in nature and should be diluted by using 1 drop of oil and 4 drops of V-6™ Vegetable Oil Complex.
3. Those who are under a physician's care or are pregnant, nursing, or taking general medications should consult with a health professional before using essential oils.
4. The safest location to apply essential oils is on the bottoms of your feet. If you accidentally touch your eyes while using essential oils—or if you feel any sensitivity after applying oils to your skin—use V-6 oil to dilute and wipe away the remaining oil. DO NOT use water or soap.
5. Because essential oils are highly concentrated, moderation is the key to effective use. Remember: A little bit goes a long way. Unless you are very experienced, using less oil is more effective.
6. Always support your use of essential oils with a healthy lifestyle. Drinking plenty of water, eating fresh foods, getting plenty of sleep, and participating in a variety of exercises will synergistically create balance in the body when using essential oils.

Historically, essential oils have been used by many societies. The model you follow will determine your application focus. Three different models are used by Young Living (English, French, and German).

**English Model:** The focus is on using a small amount of essential oil diluted with carrier oil for massage and relaxation techniques.

**French Model:** This model uses undiluted oils for topical application, as well as internally with cooking, in tea, in a gel capsule, or added to agave nectar, yacon, honey, or olive oil.

**German Model:** The primary use for this model is aromatherapy or diffusion. This method supports balanced emotions.

Be aware that certain aromatherapy information may be referring to only one of these models and may not support the benefits of the others, thus creating confusion in application methods. It is best to communicate any concerns with someone who is experienced in all three models.

Stay tuned next week for a few unique ways to use essential oils.

—Alyssa Bailey, YL Associate Product Manager

February 9th, 2013 | Uncategorized | 0 Comments

Share This Story, Choose Your Platform!    ☐ ☐ ☐ ☐

## Related Posts



Furry and bright: 5 holiday survival tips for your four-legged friends

Quest: Take this magical quiz to find your mythological diffuser blend

6 eerie-sistible essential oil ideas for the spookiest time of year

0 Comments    Young Living - US    🔒 Disqus' Privacy Policy    🔴 Login

♡ Recommend    ✚ Tweet    f Share    Sort by Newest

Start the discussion…

LOG IN WITH    OR SIGN UP WITH DISQUS ⑦

Ⓓ f Ⓣ G    Name

Be the first to comment

✉ Subscribe    ✚ Add Disqus to your site    ⚠ Do Not Sell My Data    DISQUS





CONTENT MARKETING AWARDS

Email:
Member Services:
Thanksgiving Point Business Park
3125 Executive Parkway
Lehi, UT 84043

Enter First Name
Enter Email
Select Frequency
Select a Country

Subscribe Now

Copyright 2019 - Young Living Essential Oils | All Rights Reserved | Privacy Policy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
LORI MACNAUGHTON, individually and on
behalf of all others similarly situated,

                                        Plaintiff,

-v-                                     5:21-CV-71

YOUNG LIVING ESSENTIAL OILS, LC,

                                        Defendant.
------------------------------------------------------x

**VIDEO MOTION TRANSCRIPT**
**BEFORE THE HONORABLE BRENDA K. SANNES**
December 9, 2021
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by video)

     SIRI & GLIMSTAD, LLP
     200 Park Avenue
     17th Floor
     New York, New York 10166
     BY:  **MASON BARNEY, ESQ.**

For the Defendant:
(Appearance by video)

     KIRKLAND & ELLIS, LLP
     1601 Elm Street
     Dallas, Texas 75201
     BY:  **OLIVIA ARDEN ADENDORFF, ESQ.**
          **RACHEL REZABEK, ESQ.**



*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (The Court and all parties present by video.  Time

2     noted:  2:35 p.m.)

3          THE COURTROOM DEPUTY:  Okay.  It's 2:35 now, so I

4     think we're going to go ahead and start.

5          So this is Macnaughton versus Young Living Essential

6     Oils, LC for a motion hearing, case 21-CV-71.  Can I have

7     counsel please note your appearances for the record?

8          MS. ADENDORFF:  Olivia Adendorff from Kirkland &

9     Ellis for defendant Young Living.

10          MS. REZABEK:  We also have Rachel Rezabek from

11     Kirkland & Ellis, also for Young Living.

12          THE COURT:  Good afternoon.

13          MR. BARNEY:  Good afternoon -- excuse me.  Good

14     afternoon, your Honor.  Mason Barney from Siri & Glimstad for

15     the plaintiff, Ms. Macnaughton.

16          THE COURT:  Good afternoon to everyone.  We're here

17     today for a hearing on the defendant's motion to dismiss.  And I

18     will hear from both parties, but I'm particularly interested in

19     your arguments regarding puffery, and specifically in

20     considering whether this case involves non-actionable puffery,

21     what exactly should the Court consider, the label, as well as

22     the representations on the Young Living website, and then also

23     your analysis of whether this case involves mere puffery.

24          And so I'll turn to plaintiff's counsel to begin.

25          MR. BARNEY:  Plaintiff's counsel, your Honor, or the

1  moving party?  I'm sorry.

2          THE COURT:  Well, I think --

3          MR. BARNEY:  I can just begin if you'd like.

4          THE COURT:  Right, I think it would be helpful to

5  begin with plaintiff's counsel here, Mr. Barney.  Thank you.

6          MR. BARNEY:  Certainly, your Honor.

7          So in terms of -- to answer your question first, in

8  terms of the puffery, we don't believe that this is a puffery

9  issue.  So the heart of our claim is Young Living's allegation

10 that their oils had a -- were therapeutic grade.  And they

11 didn't just say that they were therapeutic grade, they

12 identified specific mental, physical, or emotional changes that

13 would occur because of their oils.  So it's a -- therapeutic

14 grade has a meaning.  The meaning that Young Living gave to it,

15 and which I think a reasonable consumer would agree with, is

16 that they had -- they had a specific definition.  For example,

17 they said that each oil has the highest naturally occurring

18 blend of constituents to maximize the desired effect.

19         They also say --

20         THE COURT:  And when I'm considering puffery, I

21 wanted to start with the first initial question of what do I

22 look at?  I understand I look at therapeutic grade.  Do I also

23 look at the representations that were on the website about how

24 these oils can promote feelings and may help with sleepiness and

25 other things?  Do I consider that as well as the label

1    therapeutic grade?

2            MR. BARNEY:  I believe you do, your Honor, for

3    several reasons.  One -- and I believe it's in paragraph 64 of

4    our complaint, we do say that the plaintiff reviewed the

5    defendant's website and believed the claims and used them as

6    directed -- that would be 63 and 64, excuse me.  In addition, I

7    believe the issue here is what would a reasonable consumer

8    viewing that claim, therapeutic grade, what would they believe.

9    And clearly, Young Living had a definition in mind that they

10   thought a reasonable consumer would accept, which is that

11   this -- this oil does something, we know it works, we have the

12   experience to know it works.

13           You know, for example, on the website they even

14   provided -- and we quote this at paragraph 22 -- peppermint

15   essential oils should contain between 38 and 47 percent of

16   menthol to be therapeutic.  That's a specific definition of what

17   they thought therapeutic meant.  And just the fact that it says

18   grade does not make it per sé puffery.  So for example --

19           THE COURT:  And isn't it -- the paragraph about

20   therapeutic oil, isn't that on a blog that there's no indication

21   the plaintiff saw --

22           MR. BARNEY:  But that's the definition that Young

23   Living wanted the -- wanted to have.  And I believe when you're

24   looking at the question of what is puffery, what was intended by

25   the party I think is important.  In addition, just the fact that

1  it mentions the word grade doesn't make it puffery.  Yes,

2  superior grade, which is an example used in the papers, okay,

3  that's puffery.  Superior to what?  I have no idea.

4          Therapeutic has a definition.  Therapeutic means it's

5  going to have a therapeutic effect.  And couple that with the

6  specific allegations for the oils that we list that we -- that

7  plaintiff definitely did see and you -- when you view it in

8  light of the definitions that Young Living was giving to the

9  term, I don't think there's any way to view this as puffery,

10  your Honor.  I think that this was a claim that our -- that

11  Young Living's oils have a specific therapeutic effect.

12          THE COURT:  And if the therapeutic grade is

13  considered along with the website advertising that the oils may

14  provide -- may do things or can do things or promote feelings --

15  different feelings, how is that not so vague and nonspecific

16  that it at most amounts to puffery?

17          MR. BARNEY:  Well, your Honor, if vague and

18  nonspecific as -- the example I used is superior grade, that is

19  vague and nonspecific.  It -- what is -- superior to what?  Or

20  prime grade, prime what?  But if you take those same terms --

21  for instance, prime grade, and you use it in the context of

22  beef, well, there is a USDA industry definition of what is prime

23  grade.  So in a beef case, that would not be puffery.  And

24  that's why the combining of the -- the specific effects that

25  they say that this is going to have, and these specific effects

A-60

1   include numerous actual measurable things such as -- this is in

2   paragraph 63 of our complaint -- defendant's peppermint oil

3   helps maintain energy levels when applied topically or

4   defendant's lavender oil promotes feelings of calm and fights

5   off occasional nervous tension, balancing properties of mind and

6   body.  While balancing properties of mind and body may not be as

7   specific, helps promote calm, that's something that someone can

8   feel, that's something that someone has an -- that has an effect

9   on the body.  Releasing tension has an effect on the body.

10  Maintaining energy levels has an effect on the body.

11          These are specific claims rather than, as I said, the

12  examples that were provided in the papers, which really have no

13  specific definition and everyone can have a different definition

14  of what that means.

15          THE COURT:  And if I disagree with you and I find

16  that it is inactionable puffery, what claim survives?  What, if

17  any, claim survives?

18          MR. BARNEY:  I believe that under the -- under those

19  circumstances, I believe that there would be an argument that

20  the unjust enrichment claim would survive, that there were

21  claims made that defendant profited from that there was no

22  evidence.  And then on top of that, they claim that they knew

23  that these had these effects and there was no evidence to

24  support that they knew that.  So I believe unjust enrichment

25  could still survive even if the term therapeutic effect -- the

1    therapeutic grade was considered puffery.  Again, your Honor, we

2    don't believe it is, but if your Honor did find that at least

3    unjust enrichment would continue, there is an argument that the

4    warranty claims would continue because, again, they promised

5    certain specific effects for the oils on the website.  We claim

6    our client saw those specific claims and those would be the

7    warranty claims.

8            And, again, under those specific effects, I also

9    believe that the GBL claim could survive, if not the therapeutic

10   grade label itself, but the other effects such as the energy

11   levels or calming effects, those would -- they had

12   allegations -- we have allegations that they said they knew that

13   it had these effects and they didn't.  And, therefore, we

14   believe that the GBL claim would also survive under those

15   grounds.

16           THE COURT:  And with respect to the unjust enrichment

17   claim, I assume you agree that that is something that would

18   require 9(b) specific pleading?

19           MR. BARNEY:  Yes, it would.  That would be the only

20   claim, though, that would require 9(b) specific pleading.  New

21   York courts have clearly found that the GBL claim does not.

22           THE COURT:  And what's your response to the

23   defendant's claim regarding the things that the amended

24   complaint still fails to allege basic things like where she

25   actually bought the product, she says online, but Young Living's

1    a multilevel marketing company that sells products on its

2    website, through consumer retail websites, through independent

3    distributors.  There's -- I don't see anything in the complaint

4    that says how she bought the oils in this case and I don't see

5    anything regarding the benefits she expected to receive or how

6    the products failed to meet those expectations.

7          MR. BARNEY:  Well, first off, taking those in reverse

8    order, your Honor, the expectations, she expected the products

9    to do what the website said they would do.  Again, those are the

10   things in paragraph 63 of our complaint, calming, energy, et

11   cetera.

12          In terms of where she purchased it, these are --

13   these are products -- commercial products.  They were mass

14   produced.  And as your Honor said, they are a multilevel

15   marketing company.  They intentionally sell through other

16   individuals.  So where specifically our client purchased this

17   from I don't think is as important as the claims that were made

18   and if those claims are the same as claims made by Young Living,

19   which is what we allege.  In addition, the *Frito-Lay* case that

20   we cite, that's 2013 WL 4647512, out of the Eastern District,

21   that case specifically said you don't need to allege a specific

22   purchase place.

23          So we believe that we have the who, what, when,

24   where, why, and how.

25          Who:  Young Living.

1          What:  The therapeutic grade claims and the claims of

2     mental and physical and medical benefits.

3          The when:  Courts have said, for example, the

4     *Frito-Lay* case again, that you don't need to provide a specific

5     date.  And we say the last four years, but we also say in

6     paragraph 61 in or around February 2020.  We don't need to give

7     a specific date in order to provide the specific notice that is

8     required under 9(b).

9          Where:  We identify defendant's labels, defendant's

10    website, defendant's marketing.

11          And the how is:  As we described, they made specific

12    claims that it was therapeutic grade and/or that it was having

13    these specific effects and in doing so, they said they knew that

14    it had these effects and they didn't know that.

15          And the why was to induce the premium that we showed

16    was paid.

17          THE COURT:  And does the complaint allege the

18    benefits she expected to receive and how the product failed to

19    meet those expectations?

20          MR. BARNEY:  Yes, I believe the benefits that she

21    expected to receive are the ones that we list that the company

22    alleged, the calming effects, the energy, et cetera, and the

23    complaint does say that she did not receive those benefits.

24          THE COURT:  Where does it say that?

25          MR. BARNEY:  Excuse me, your Honor.  I believe in

1    paragraph 64 where it says it was used in the manner instructed

2    and then in 65, she would not have purchased it had she known it

3    didn't give the effects, and in 66 -- oh, no, excuse me, 64 and

4    65 would be the spots.

5           If your Honor does not believe that, I have spoken

6    with her.  We can easily amend to include that if that -- I

7    mean, that would be just a technical missing point.

8           THE COURT:  And is there more information that could

9    be provided regarding how she purchased these, from the website,

10   from consumer retail, from --

11          MR. BARNEY:  I could if your Honor believed it was

12   necessary, yes.

13          THE COURT:  Okay.  Anything further?

14          MR. BARNEY:  Well, I just wanted to also address one

15   of the primary points that Young Living makes, which is the lack

16   of substantiation.  A couple of points I want to make quickly,

17   your Honor.  First is that the cases that they cite for lack of

18   substantiation are all out-of-state cases and I haven't been

19   able to find any cases that specifically say that New York GBL

20   349 or 350 do not allow for lack of substantiation.  In fact,

21   the one New York case they cite to, *Hughes v. Ester C*, that was

22   analyzed under California law.  And California has a specific

23   statute which is Business Code 17508 that says that only the

24   Attorney General is allowed to ask for substantiation.  So

25   that's a very different circumstance compared to GBL, which is

1  to be construed broadly to suppress the business evils and

2  deceptive acts.

3        In addition, our claims are that the -- so first, we

4  believe that even if it is a lack of substantiation claim, that

5  that's actionable under 349 and 350.  Even if your Honor

6  believes that it is -- it is not actionable, we don't believe

7  that this is actually a lack of substantiation claim because, as

8  I said, the -- Young Living made it clear that they had the

9  knowledge and experience and made specific claims about specific

10  effects that their products would have and they didn't have that

11  knowledge and experience.  That is an affirmative

12  misrepresentation.

13        And in addition, we believe that the articles that we

14  cite are more than sufficient at the pleading stage where

15  inferences must be drawn in favor of the plaintiff to show if

16  for no other reason than what we're trying to prove here isn't

17  negative.  You can't -- to prove that it didn't have these

18  effects, the best we can say is there is no evidence that it had

19  these effects, and that's exactly what the articles say.  It's

20  not like we're trying to say that this does have an effect, in

21  which case we would expect there to be an article that says

22  that.

23        So that was the only other points I wanted to make,

24  your Honor.

25        THE COURT:  Okay.  Thank you, Mr. Barney.

1          MR. BARNEY:  Thank you.

2          THE COURT:  And let me ask defense counsel:  Do you

3     agree that in this case where the plaintiff's claim is based not

4     only on the label, but also on the website advertising, that the

5     Court needs to consider both in considering the issue of whether

6     it's puffery?

7          MS. ADENDORFF:  No, your Honor.  First of all, on

8     paragraph 64, which plaintiff's counsel cited, it never says

9     that the plaintiffs actually saw the websites or listed in the

10    complaint as making specific claims about specific products.  In

11    addition, I think the fact that the therapeutic grade

12    representation is on the label of the product with none of these

13    other representations just means that it cannot be considered

14    together with a totally separate representation on a website

15    that may or may not have been seen by plaintiff -- we have no

16    reason to believe that it was -- and they're not connected.

17          In other words, if you had a label where it said

18    therapeutic grade and then on the same label had that same

19    claim -- you know, any of these specific health and wellness

20    claims, then you may be in a situation where you might consider

21    them together.  But here where therapeutic grade is just a label

22    on every single one of their products, not specifically -- you

23    know, was formerly, I should say, because it's now been

24    removed -- but it's not tied to any specific claim, but is on

25    all of their products.  There's no reason to read it in light of

1   the more specific claims that they're also challenging.  I think

2   we should be looking at those separately and if -- and, if, you

3   know, the plaintiff believes that those specific claims were

4   false, then that might be a theory to pursue.  Although, I'll

5   point out that none of the studies or the NAD proceeding, none

6   of that actually supports falsity of those specific claims.

7   There's nothing in the complaint that says, you know, the claim

8   about Dragon Time specifically is false or that the peppermint

9   oil was not of a certain concentration.  There's no facts

10  supporting the falsity of those specific claims.  But in any

11  case, the therapeutic grade label is classic puffery.  It --

12          THE COURT:  Well, let me stop you there because I may

13  not agree with that.

14          MS. ADENDORFF:  Mm-hmm.

15          THE COURT:  But don't the -- it seems pretty clear

16  that the courts have to view the allegedly misleading

17  statement -- in this case it would be puffery grade -- in light

18  of its context in the advertisement, and if the plaintiff is

19  alleging in paragraph 63 that she viewed and relied on these

20  assertions, why does the Court not consider that in connection

21  with whether the -- it is, as a whole, puffery?  Because I think

22  that -- those assertions hurt plaintiff's case.

23          MS. ADENDORFF:  I'm sorry, can you say that last part

24  again?  I'm not sure --

25          THE COURT:  Yes, I don't think assertions that an oil

1  promotes feelings or helps to maintain energy level are really

2  the kind of objective specific claims that would support a --

3  the kind of claims that are sought here.  To me -- it appears to

4  me that those representations are supportive of an argument of

5  puffery and I'll allow both counsel to be heard on that, but my

6  initial question is why doesn't the Court consider the

7  representations that the plaintiff said she reviewed and relied

8  on in paragraph 63 together with the therapeutic grade label?

9           MS. ADENDORFF:  I think because of the fact that the

10 defendant did not make those representations together.  In other

11 words, for the therapeutic grade to be an actionable

12 representation, it must have an object, it must -- you know, the

13 plaintiff's counsel cited the website saying that therapeutic

14 grade means it maximizes a desired effect.  There must be an

15 identified desired effect that you would be testing its

16 effectiveness against.  And when the defendant did not connect

17 therapeutic grade to any of these specific claims, rather --

18 instead, the therapeutic grade label is on all of its products

19 no matter the type, whether its peppermint oil or, you know,

20 eucalyptus, which may have different properties and different

21 effects.  There's no reason to read into it that the defendant

22 was communicating any specific desired effect that would be

23 maximized.  And I think it makes sense to read them separately

24 and really, as you point out, all of it to be read as puffery.

25           THE COURT:  Okay.  And in your view, what -- what --

1    if the Court finds it is puffery, what survives?

2              MS. ADENDORFF:  I don't think anything survives, your

3    Honor.  All of the claims here are based on the fundamental

4    allegation of falsity -- or that they need to be based at least

5    on falsity and not just lack of substantiation.  So, for

6    example, unjust enrichment, the enrichment can only be unjust if

7    there was some action that occurred that should not have

8    occurred, some false statement.  Unjust enrichment cannot occur

9    if there's a -- you know, a vague claim that's not actionable.

10   Non-actionable means non-actionable.  Puffery is not

11   challengeable under any of these other theories.  You can't

12   dress it up in a different outfit and say that it proceeds.  So

13   I think all of the claims fail, your Honor.

14             THE COURT:  And the plaintiff thought the warranty

15   claims survived.  Do you disagree?

16             MS. ADENDORFF:  I disagree for the same reasons.  If

17   a promise is insufficiently specific to be false, it's also

18   insufficiently specific to be a warranty.

19             THE COURT:  Okay.  And I understand that

20   unsubstantiated advertising is not a basis for a cause of action

21   under California law, but aren't there some state consumer broad

22   statutes that do permit false advertising claims based on lack

23   of substantiation?

24             MS. ADENDORFF:  Well, I, first of all, want to point

25   out on that that the plaintiffs have brought claims under 13

1   different states, including California.  And in our briefing we
2   cited cases -- the *Franulovic v. Coca-Cola* case addresses New
3   Jersey law, the *Gredell v. Wyeth Labs* case addresses Illinois
4   law, *Hasemann v. Gerber Products* cites Florida and Wisconsin
5   law, consistently reaching the same conclusion that lack of
6   substantiation is insufficient.
7            And I think we need to go back to the policy reason
8   behind why lack of substantiation is insufficient.  The statutes
9   prohibit false and misleading statements, that it -- an
10  unsubstantiated statement is not the same as a false statement.
11  Something can obviously be un-substantiation -- unsubstantiated
12  while being true.  And it has been the consistent, you know,
13  policy of these -- of all these different states that we have
14  cited cases regarding to defer to government regulators to
15  choose what substantiation requirements are needed because,
16  obviously, it puts a great burden on businesses to require a
17  certain level of scientific substantiation for a claim.  And
18  that's an appropriate thing for a regulator like the FTC to --
19  you know, to draw the lines and to clarify what kind of
20  substantiation is needed, or as these California consumer
21  statutes leave that to the government for that reason, or any of
22  the other states that I mentioned.
23           THE COURT:  Okay.  Anything further, Ms. Rezabek?
24           MS. ADENDORFF:  No.  No, your Honor.  And by the way,
25  it's Olivia Adendorff.

1          THE COURT:  Oh, I'm sorry.

2          MS. ADENDORFF:  That's all right.  I just want to get

3     it straight for the court reporter.

4          THE COURT:  I'm sorry, I missed that.

5          MS. ADENDORFF:  No, that's all right.

6          THE COURT:  And let me ask Mr. Barney:  The defense

7     counsel argues that the Court should only consider the

8     representations in 63 if the Court considers anything beyond

9     therapeutic grade.  Why should the Court also consider the

10    representations in paragraph 21?

11         MR. BARNEY:  Those were part of the overall marketing

12    of the product, your Honor.  These -- yes, they are right that

13    there were different products, but it's overall marketing, it's

14    the overall -- it's the context in which Young Living placed

15    these products.  And in that context, they were saying we know

16    the products do X, Y, and Z.  And, for example, the calming

17    effect, which is a physical effect, and products out there say

18    that they have a calming effect, it is a measurable thing that

19    scientists could have measured whether it has a calm effect or

20    not.  In fact, some of the articles talk about attempts to do

21    so.  They weren't able -- there were methodological flaws, but

22    there were attempts to do so.  So those -- in that way, those

23    are not puffery because they are measurable.

24         And it needs to -- as your Honor said, whether it's

25    puffery or not needs to be viewed in the whole context.  If

1  they're wanting to say, well, it says therapeutic grade here,

2  but over here we say it's -- it will have these effects, well, a

3  regular -- a consumer -- a reasonable consumer would put those

4  two things together to show, yes, the therapeutic grade means it

5  has these effects.

6           I would also -- I would just -- I'm sorry, I'll let

7  your Honor go if you have another question.

8           THE COURT:  No, I -- no, I didn't.

9           MR. BARNEY:  I would just point out under the

10 unsubstantiated question, as I said, California has its own

11 statute.  The New Jersey case that they cite merely says, well,

12 no one has done it -- no one has said that there is

13 un-substantiation yet so I'm not going to touch that.  The

14 Illinois case actually supports our argument, in that it says

15 that if there is no substantiation, okay, maybe, but if the

16 company is saying that we know that it does X, Y, and Z or tests

17 show it does X, Y, and Z, that is an affirmative misstatement

18 and not an unsubstantiated claim.

19          And as to leaving it to government entities, well,

20 New York has not done that.  Unlike California where the

21 legislature made a clear decision, New York has not.  And New

22 York has a long tradition of broadly interpreting GBL 349 to

23 cover all manner of evils, and that would include saying that a

24 product does something and not having any evidence that it does

25 so.  Otherwise, it -- the other option is if we say, oh, no, it

1  doesn't cover that, well, then there's a good incentive for

2  companies not to test their products, not to try and evaluate

3  whether what they're saying is true or not because then they

4  could just say, well, it's unsubstantiated.  So that's why an

5  unsubstantiated claim should not fall under that exception in

6  New York at least.

7            As to other states, if the Court believes, for

8  example, that California needs to be eliminated from the matter,

9  that's one thing.  But I think the New York GBL claims certainly

10 would survive and we would believe that the other states, other

11 than the ones listed, would survive, as well.

12           THE COURT:  Okay.  Thank you, Mr. Barney.

13           Anything further, Ms. Adendorff?

14           MS. ADENDORFF:  Yes, I just want to address this --

15 the connection between the therapeutic grade and the specific

16 claims made in paragraph 63.  If the contention is that

17 therapeutic grade has meaning because the frankincense oil

18 promises feelings of relaxation and tranquility, I'm not sure

19 what -- what action the therapeutic grade representation is

20 doing in that sentence, which is exactly why I think it's

21 puffery.  In other words, if it just means we're doing whatever

22 the specific promise is, then isn't the specific promise the one

23 that's really being challenged, the one about the relaxation and

24 tranquility, and therapeutic grade is not actually adding

25 anything to the representation, which, I think, is exactly why

1   it is -- we contend that it's just a vague and untestable

2   descriptor that doesn't add anything to the claims and must be

3   seen as puffery.

4          MR. BARNEY:  If I may, your Honor, on that point?

5          THE COURT:  Yes.

6          MR. BARNEY:  Young Living -- in multiple citations we

7   have in our brief and in our complaint, Young Living did say our

8   therapeutic grade label matters, our therapeutic grade label is

9   better than other people's therapeutic grade label because we

10  have the knowledge and experience.  So clearly they thought that

11  the therapeutic grade label does have that effect.  And as with

12  the peppermint example I gave, they believe that there was a

13  direct connection.

14         THE COURT:  And do you consider that part of the

15  overall marketing?  It looks like the things you're relying on

16  were provided directed to the sales force.

17         MR. BARNEY:  Absolutely that was part of the overall

18  marketing.  As your Honor mentioned, this is a multilevel

19  marketing company telling their sales force how to sell the

20  product.  That's how they intended it to be sold.  And I don't

21  think -- I don't think it would be fair to consumers to allow a

22  company to say, well, here's our definition of this statement,

23  it has a specific definition that we think is better than others

24  for specific reasons, but on the other hand, now that we're

25  being sued, oh, no, it doesn't have any specific definition.

1          THE COURT:  I see.  Okay.  I will take it under

2    submission.

3          Thank you, counsel, for the arguments and we'll issue

4    a decision shortly.

5          MS. ADENDORFF:  Thank you, your Honor.

6          MR. BARNEY:  Thank you very much, your Honor.  Happy

7    holidays.

8          THE COURT:  Same to you both.  Thank you.

9          THE COURTROOM DEPUTY:  Court is adjourned.

10          (Time noted:  3:05 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR, Official U.S. Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 10th day of March, 2022.

s/ Hannah F. Cavanaugh
HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
Official U.S. Court Reporter

A-77

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LORI MACNAUGHTEN, individually and on behalf of all
others similarly situated,

           Plaintiff,

v.

YOUNG LIVING ESSENTIAL OILS, LC,

           Defendant.

---

        5:21-cv-00071 (BKS/ML)

**Appearances:**

*For Plaintiff:*
Gary M. Klinger
Mason Lietz & Klinger LLP
227 W. Monroe St., Ste. 2100
Chicago, IL 60606

Gary E. Mason
Mason Lietz & Klinger LLP
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016

Aaron Siri
Mason A. Barney
Siri & Glimstad LLP
200 Park Ave., 17th Fl.
New York, NY 10166

*For Defendant:*
Olivia Arden Adendorff
Jeremy A Fielding
Rachael A. Rezabek
Kirkland & Ellis LLP
1601 Elm St.
Dallas, TX 75201

Alexia Renee Brancato
Kirkland & Ellis LLP
601 Lexington Ave.
New York, NY 10022

Hon. Brenda K. Sannes, United States District Judge:

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

Plaintiff Lori MacNaughten[1] brings this proposed class action against Defendant Young

Living Essential Oils, LC for Defendant's allegedly "unlawful and deceptive conduct" in the

"marketing, sale and delivery" of its line of essential oil products. (Dkt. No. 21, ¶¶ 1–5). Plaintiff

asserts claims on behalf of herself and others similarly situated who purchased Young Living

essential oil products, alleging: violation of the State Consumer Fraud Acts of the states in the

Consumer Fraud Multi-State Class (Count I); violation of New York General Business Law

("NYGBL") § 349 in the alternative to Count I and on behalf of Plaintiff and the New York Sub-

Class (Count II); violation of NYGBL § 350 in the alternative to Count I and on behalf of

Plaintiff and the New York Sub-Class (Count III); violation of NYGBL § 350-A(1) on behalf of

Plaintiff and the National Class and/or New York Sub-Class (Count IV); breach of express

warranty on behalf of Plaintiff and the National Class (Count V); breach of implied warranty of

merchantability on behalf of Plaintiff and the National Class (Count VI); breach of implied

warranty of fitness for a particular purpose on behalf of Plaintiff and the National Class (Count

VII); and unjust enrichment in the alternative on behalf of the National Class and the New York

Sub-Class (Count VIII). (*Id.* ¶¶ 80–172).

Presently before the Court is Defendant's motion to dismiss (Dkt. No. 26) the First

Amended Complaint ("FAC") under Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil

---

[1] Although Plaintiff's name is spelled "Macnaughten" in the original complaint, (Dkt. No. 1), in the First Amended Complaint ("FAC") it is spelled "MacNaughten," (Dkt. No. 21). The Clerk is respectfully requested to correct the spelling on the docket.

Procedure for failure to state a claim upon which relief can be granted. Plaintiff opposes Defendant's motion. (Dkt. No. 27). The Court held oral argument on December 9, 2021. For the following reasons, Defendant's motion to dismiss is granted.

## II.    FIRST AMENDED COMPLAINT[2]

Young Living manufactures and sells essential oils and blends. (Dkt. No. 21, ¶¶ 11, 18). The company markets its products "through its website and other e-commerce channels," selling the products throughout the United States and on consumer retail websites, but also by recruiting "thousands of independent distributors" who sell the products to customers through a multi-level marketing model. (*Id.* ¶¶ 13–14).

Plaintiff, a citizen of New York residing in Syracuse, purchased Young Living products online sometime "in the last four years, and specifically on or around February 2020." (*Id.* ¶¶ 6, 61). She purchased essential oils "includ[ing], but not limited to," frankincense, lavender, peppermint, eucalyptus, cinnamon, and orange. (*Id.*). She read on the label of the oils that they were "therapeutic-grade" and would provide a "physical, mental, or medicinal benefit," and she believed these claims. (*Id.* ¶ 62). Plaintiff used the Products she purchased "in the manner Defendant instructed her to, either on the Products['] label and/or in the marketing and advertising materials included with her purchase and/or as seen by the Plaintiff on Defendant's website." (*Id.* ¶ 64). Plaintiff also:

> viewed and relied on . . . Defendant's claim(s) or claims substantially similar to the following:
>
> • Defendant's frankincense oil "promotes feelings of relaxation & tranquility";

---

[2] The facts are drawn from the FAC. The Court assumes that all well-pleaded facts are true and draws all reasonable inferences in Plaintiff's favor. *Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

- Defendant's lavender oil "promote[s] feeling of calm and fight[s] occasional nervous tension' and has 'balancing properties that calm the mind and body'";
- Defendant's peppermint oil "helps to maintain energy levels when applied topically."

(*Id.* ¶ 63).[3] Plaintiff was "misled by Defendant's misrepresentations" and "would not have purchased and used the Products had she known that they did not provide the promised benefits," or she would not have purchased the Products at the price that Young Living charged. (*Id.* ¶¶ 65–66).

### A. Product Labeling and Marketing

Young Living "prominently labels" each bottle of its essential oil products as "100% Pure, Therapeutic-Grade." (*Id.* ¶ 19). Plaintiff included an image of Young Living Product packaging in the FAC, with each bottle depicted including the "therapeutic-grade" claim.[4] (*Id.*).



The Young Living website also makes specific claims about the "physical, mental, or medicinal" benefits of specific oils and blends. (*Id.* ¶¶ 20–21). The claims include:

- "Dragon Time 'can help promote feelings of stability and calm during occasional times of moodiness'";

---

[3] The FAC contains no allegations regarding any "promised benefits" of the three other essential oils Plaintiff allegedly purchased—eucalyptus, cinnamon, and orange.

[4] The pictured bottles include: Frankincense, Lemon, Peppermint, "Peace & Calming," "PanAway," "Valor," and Oregano. (Dkt. No. 21, ¶¶ 19, 32).

- "Lavender can 'ease your occasional nervous tension'";

- "Bergamot Oil '[m]ay help relieve tension during times of occasional stress'";

- "Sleeplyze 'promotes feelings of relaxation and tranquility for restful sleep . . . and a peaceful send-off to dreamland'";

- "Freedom 'may help with occasional sleeplessness or restlessness'";

- "RC oil []'creates the feeling of normal clear breathing and a refreshing respiratory experience'";

- "Brain Power . . .'promote[s] a sense of clarity and focus when used aromatically'";

- "Davana oil 'boosts your positive outlook on life'";

- "One Heart 'encourages a bright outlook on life'"; and

- "Peppermint 'helps to maintain energy levels when applied topically.'"

(*Id.* ¶ 21). Furthermore, on its website, Young Living instructs its salespeople that when "describing therapeutic-grade oils," they should relay that "every essential oil . . . has the highest naturally-occurring blend of constituents to maximize the desired effect." (*Id.* ¶ 22). A now-removed statement on Young Living's website described the therapeutic-grade "promise" as a "bold statement," but encouraged that "you can share our products with confidence, knowing that Young Living truly has the experience to produce essential oils that work." (*Id.*). This statement, although removed from Young Living's website, has not been removed from its "various blogs and other websites." (*Id.*).

Young Living also maintains "the D. Gary Young Blog," named for its founder. (*Id.*). On May 9, 2019, a Blog re-post titled "Eight Ways to Find Pure, Therapeutic-Grade Essential Oils" stated that:

> Pure, therapeutic-grade essential oils can have therapeutic effects on their users. The purer the oils, the stronger the benefits . . . Peppermint essential oil should contain between 38 and 47 percent menthol to be therapeutic . . .

5

Look for a guarantee of therapeutic grade, which Young Living provides.

(*Id.*). The blog post then describes how Young Living's "guarantee of therapeutic-grade oils is superior to all other 'therapeutic-grade' promises because Mr. Young 'developed Young Living's very high standards for therapeutic-grade essential oils,'" standards that separate its products from its competitors'. (*Id.* ¶ 23).

### B. Price

Customers "pay a premium" for Young Living essential oils. (*Id.* ¶ 18). Young Living's products cost more than its competitors': 1) Young Living charges $33.22 for a 15ml bottle of lavender essential oil, while Walmart charges $4.98 for a similar bottle; 2) Young Living charges $103.29 for a 15ml bottle of frankincense essential oil, while Amazon charges $21.50 for a similar bottle; 3) Young Living charges $52.63 for a 5ml bottle of valerian essential oil, while Eden's Garden charges $16.95 for a similar bottle; and 4) Young Living charges $30.26 for peppermint essential oil, while Target charges $6.50 for a similar bottle. (*Id.*). The "therapeutic-grade" guarantee is "one of the major reasons Young Living is able to charge a premium," and yet "no reasonable consumer would have paid a premium for the Products if they knew they did not provide the promised therapeutic benefits." (*Id.* ¶¶ 23, 57).

### C. False and Misleading Claims

Plaintiff contends that Defendant's representations that its oils are "therapeutic-grade" and have numerous health benefits are "false or misleading or were not substantiated at the time the representations were made." (*Id.* ¶ 38). In 2014, the Food and Drug Administration (FDA) issued a warning letter to Young Living as a result of promoting its essential oils for the treatment of "viral infections (including Ebola), Parkinson's disease, autism, diabetes, hypertension, cancer, insomnia, heart disease, post-traumatic stress disorder (PTSD), dementia, and multiple sclerosis," conditions that are not "amenable to self-diagnosis and treatment by

individuals who are not medical practitioners." (*Id.* ¶ 50). Subsequently, the National Advertising

Division (NAD), which Plaintiff describes as "the advertising industry's robust self-regulatory

body which offers a vigorous dispute resolution process for advertisers and is charged with

independently monitoring and reviewing national advertising for truthfulness and accuracy,"

directed Young Living to permanently discontinue its claim that the oils are "therapeutic." (*Id.* ¶¶

26–27). According to the FAC, "[i]n that proceeding, Young Living failed to provide any

competent and reliable scientific evidence to support its health-related claims about the Products,

including that they are 'therapeutic.'" (*Id.* ¶ 27). Specifically, the NAD found:

> in the absence of specific product testing (or evidence that Young
> Living's essential oils have not only the same ingredient, but that
> such ingredients appear in the products in the same dosage and
> formulation and that the route of administration is the same as the
> underlying tests reasonably permitting extrapolation of results from
> the studies to the claims made) . . . claims its essential oils are
> "therapeutic grade" and confer promised physical and mental
> benefits are unsubstantiated.

(*Id.* ¶ 52). Young Living agreed to discontinue use of its "therapeutic-grade" claim and several

other health-related claims, including that its oils "promote feelings of calm," "help consumers

sleep," "reduce your anxiety," and "provide clarity, focus and/or alertness." (*Id.* ¶ 29). In

November 2020, a panel of the National Advertising Review Board (NARB) affirmed the

NAD's ruling, finding that Young Living "should discontinue 'therapeutic-grade' claims for its

'essential oils'" as these claims are "unsupported." (*Id.* ¶ 31). Nevertheless, "Young Living's

website continues to reference 'therapeutic-grade essential oils,'" "bottles of various Young

Living products deceptively labeled as 'therapeutic-grade essential oils' can still be purchased

through numerous third-party vendors," and Young Living's YouTube channel "repeatedly

shows the [essential oils] with 'therapeutic-grade' on the bottles." (*Id.* ¶ 32).

Plaintiff cites to three studies regarding the health benefits of essential oils.[5] First, the "multidisciplinary peer reviewed scientific journal" Maturitas published an article ("Maturitas Article") in 2012 titled "Aromatherapy for health care: An overview of systematic reviews." (*Id.* ¶ 53). The Maturitas Article defines aromatherapy as "the therapeutic use of essential oil from herbs, flowers, and other plants." (Dkt. No. 26-5, at 2). The authors of this article conducted "electronic searches" for reviews of the effectiveness of aromatherapy. (*Id.* at 2). They begin their article by noting that "the therapeutic effects of aromatherapy are not well supported by clinical studies." (*Id.*). Overall, they found that "[t]he evidence for psychological health and pain relief is encouraging but not convincing," and that overall aromatherapy "may induce relaxation which, in turn, might improve pain and psychological health." (*Id.*). However, whether aromatherapy may treat other conditions "is even less clear." (*Id.*). The authors concluded that "[d]ue to a number of caveats, the evidence is not sufficiently convincing that aromatherapy is an effective therapy for any condition." (*Id.*).

Plaintiff also cites to a September 2019 report by the Evidence Synthesis Program Center for the Department of Veterans Affairs ("DVA Report"). (Dkt. No. 21, ¶ 54). The DVA Report "reviewed studies which addressed the effectiveness of aromatherapy with essential oils" and found "unclear or insufficient evidence to establish that inhaled essential oils are an effective therapeutic treatment for 'anxiety, depressive symptoms, nausea, pain, psychological symptoms in women aged 45+, [and] hypertension,'" and had "low confidence" in the evidence for essential oil use to treat sleep and stress. (*Id.*). The authors found "several areas where [essential oils] are potentially promising for particular populations and/or conditions," but cautioned that

---

[5] The Court has considered these studies which the parties discussed in their briefing and which were attached to Defendant's motion to dismiss because, as discussed *infra*, the Court finds that they were incorporated into the FAC by reference. (Dkt. Nos. 26-5 to 26-7).

they "found insufficient evidence to characterize treatment effects in most of the conditions studied." (Dkt. No 26-7, at 42).

Finally, Plaintiff alleges that "[o]ther studies are equally unavailing in support of Defendant's claims that the products are 'therapeutic,'" citing in a footnote to an article by B. Cooke and E. Ernst titled "Aromatherapy: a systemic review" ("Cooke & Ernst Review") published in the British Journal of General Practice in 2000. (Dkt. No, 21, ¶ 55 n.35). The authors of this study conducted a literature review on aromatherapy to "discover whether any clinical indication may be recommended for its use." (Dkt. No. 26, at 2). Overall, the authors cautioned that the original studies were small and suffered from methodological flaws, but that "[n]evertheless, the results seem to support a belief that aromatherapy massage can be helpful for anxiety reduction for short periods." (*Id.* at 4). Even so, they concluded that "[t]here is no published literature that provides a sound rationale for the use of aromatherapy massage as a medical intervention." (*Id.*) The authors summarized their findings as: "Based on a critical assessment of the six studies relating to relaxation, the effects of aromatherapy are probably not strong enough for it to be considered for the treatment of anxiety. The hypothesis that it is effective for any other indication is not supported by findings or rigorous clinical trials." (*Id.* at 2).

### D.    Proposed Classes

Plaintiff seeks the certification of the following classes:

**National Class:** All persons within the United States who purchased essential oil products labeled as 'therapeutic' from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification . . .

**Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts. Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington, and Wisconsin who purchased essential oil products labeled

as 'therapeutic' from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification . . .

**New York Sub-Class:** All persons in New York who purchased essential oil products labeled as 'therapeutic' from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification.

(Dkt. No. 21, ¶ 68) (emphases in original).

## III.   DISCUSSION

### A.    Materials Outside the Complaint

Defendant asks the Court to take judicial notice of several documents and websites. (Dkt. No. 26-10). First, it asks the Court to consider the Maturitas Article, the DVA Report, and the Cooke & Ernst Review, which it submitted with its motion to dismiss. (*See* Dkt. Nos. 26-5 to 26-7). Plaintiff referenced each of these articles in her FAC but did not attach them. (Dkt. No. 21, ¶¶ 53–55). Plaintiff discusses each of these articles in her opposition to the motion to dismiss, (Dkt. No. 27, at 13–14), but has not responded to Defendant's request that the Court consider these documents or websites.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby

rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

The Court will consider the Maturitas Article, DVA Report, and Cooke & Ernst Review attached to Young Living's motion to dismiss. The FAC describes in detail the content of the Maturitas Article and DVA Report, devoting a paragraph to each study. (Dkt. No. 21, ¶¶ 53–54); *see McLennon v. City of New York*, 171 F. Supp. 3d 69, 88–89 (E.D.N.Y. 2016) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." (internal quotation marks and citation omitted)). Plaintiff's reference to the Cooke & Ernst Review is also "clear, definite, and substantial"; she cites it in support of her claim that "other studies" are "equally unavailing" to support Defendant's "therapeutic" claim and quotes the authors' summary of their findings. (Dkt. No. 21, ¶ 55 n.35). Further, the FAC "relies heavily upon [the] terms and effect" of the studies, "rendering the document[s] integral to the complaint." *Nicosia*, 834 F.3d at 230. Accordingly, the Court considers the three studies.

Second, Young Living asks the Court to take judicial notice of (1) "A true and correct copy of the front product label for Young Living's 'Harmony' essential oil product containing the 'therapeutic grade' statement," (Dkt. 26-3); (2) screenshots of "Young Living's product page for Harmony on its public website," (Dkt. No. 26-4); (3) a "printout of essential oils company Revive's webpage for its Lavender essential oil product," (Dkt. No. 26-8); and (4) a "printout of Wal-Mart's webpage displaying a Homedics lavender essential oil product," (Dkt. No. 26-9).

(Dkt. No. 26-10). As the "Harmony" essential oil product is mentioned nowhere in the FAC, the Court declines to consider the Harmony product label or screenshots. *See Nicosia*, 834 F.3d at 230. Further, the Court declines to take judicial notice of the Revive and Wal-Mart webpages, as there is no evidence that these printouts accurately depict the products at issue from the relevant time period. *See Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 263 n.5 (S.D.N.Y. 2018) ("Courts may take judicial notice of publically [sic] available websites when the authenticity is not in dispute.").

## B. Standard of Review

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (*quoting Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (*citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d at 98)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## C. NYGBL–Non-Actionable Puffery

Defendant moves to dismiss the FAC on the ground that "the challenged 'therapeutic grade' claim underlying each cause of action constitutes non-actionable puffery." (Dkt. No. 26-1,

at 22–24). Plaintiff responds that Young Living's "therapeutic-grade" claim, when read together with representations on Defendant's website and blog concerning the definition of therapeutic-grade, shows that Defendant's statements are not "mere puffery." (Dkt. No. 27, at 21–22). The Court concludes that Defendant's representations, as alleged in the FAC, amount to no more than puffery and are therefore non-actionable.

Counts II–IV allege violations of NYGBL §§ 349 and 350. (Dkt. No. 21, ¶¶ 87–137). [6] These NYGBL provisions, read together, declare unlawful "deceptive acts or practices in the conduct of any trade, business, or commerce," including false or misleading advertising, which is defined as "advertising, including labeling . . . if such advertising is misleading in a material respect." Claims for violations of NYGBL §§ 349 or 350 are not cognizable when based on advertising statements that are mere "puffery." *See, e.g., Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020). "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)). "Statements that are 'expression[s] of opinion,' rather than of fact, have been labeled as 'mere puffing' that cannot form the basis of a fraud claim." *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010) (quoting *ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC*, 858 N.Y.S.2d 94, 95 (2002)). "To determine whether a statement is puffery, courts can look at a variety of factors, including '(i) vagueness; (ii) subjectivity; and (iii) inability to influence the buyers' expectations.'" *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-cv-1228, 2020 WL 777462, at *8, 2020 U.S. Dist.

---

[6] Although Defendant argues for dismissal of the entire FAC based on puffery, it has only briefed puffery in the context of the consumer statutes. (Dkt. No. 26-1, at 22–24).

LEXIS 26919, at *21 (N.D.N.Y. Feb. 18, 2020) (quoting *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)).

"The 'vagueness' factor applies when the disputed statements fail to describe a specific characteristic of the product on which the claims are based." *Avola*, 991 F.Supp.2d at 392. "The 'subjectivity' factor applies when the disputed statements may not be measured on an objective basis, such as by reference to clinical studies or comparison with the product's competitors." *Id.* at 393. *See, e.g., Time Warner Cable, Inc.*, 497 F.3d at 159 (noting that in the false advertising context "[s]ubjective claims about products, which cannot be proven either true or false" are puffery) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (holding that defendant's claim that he conducted "thorough" research was nonactionable puffery)).

Since "context is crucial" in "determining whether a reasonable consumer would have been misled by a particular advertisement," *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019), and Plaintiff challenges Defendant's marketing scheme as a whole, (*see* Dkt. No. 21, ¶¶ 2, 4 (asserting that the "therapeutic grade" claim is false, and that "acts and omissions in connection with the marketing, sale and delivery of the products" violate consumer protection laws)), the Court considers the overall advertising for the oils.[7] This includes advertising statements on Defendant's website regarding the health benefits of specific products, including that frankincense oil "promotes feelings of relaxation & tranquility"; that lavender oil "promotes feelings of calm and fight[s] occasional nervous tension" and has "balancing properties that calm the mind and body"; and that peppermint oil "helps to maintain energy levels when applied topically." (Dkt. No. 21, ¶¶ 21, 63). The Court also considers other marketing representations

---

[7] At oral argument, Plaintiff agreed that the Court should consider the context of Young Living's website, and not merely the label, in analyzing the claim of puffery.

alleged in the FAC, including Defendant's alleged instructions given to marketing staff and statements made in a blog post, (*id.* ¶¶ 22–23). *See Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (N.Y. 1999) (considering representations made in "sales presentations" as well as in a videotape instructing the defendant's agents on how speak to clients); *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 183 (E.D.N.Y. 2016) (evaluating whether statements appearing on "Uber's website, either directly or in the form of links to blog posts" are "puffery in the false advertising context") (internal quotation marks omitted).

While mindful that "courts should ordinarily refrain from resolving questions of reasonableness on a motion to dismiss," *George v. Starbucks Corp.*, 857 F. App'x 706–07 (2d Cir. 2021), in this case the Court finds that the language at issue is non-actionable puffery. As alleged in the FAC, the term "100% Pure, Therapeutic-Grade" is on *all* of Defendant's product labels, ranging from peppermint and eucalyptus to orange and frankincense, all of which have different purported health benefits according to claims on Defendant's website. (*See* Dkt. No. 21, ¶¶ 19, 21, 63). The term, as presented on the Products' labels, does not appear to have any "concrete discernable meaning," *AirHawk Int'l, LLC v. TheRealCraigJ, LLC*, No. 16-cv-00624, 2016 WL 9584008, at *3, 2016 U.S. Dist. LEXIS 189986, at *9 (C.D. Cal. Aug. 1, 2016) (quoting *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013)); it does not communicate "any specific details about the product," nor is it accompanied by any specific details on the label—other than the type of oil—that would, when viewed together, signal to a consumer that "the product would operate in an objective measurable way." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484, 2015 WL 2344134, at *13, 2015 U.S. Dist. LEXIS 63464, at *31 (E.D.N.Y. May 14, 2015).

In any event, when the Court also considers the overall advertising for the oils, (Dkt. No. 21, ¶¶ 21, 63), including how the oils "*promote[] feelings of relaxation*" or "*help[] to maintain energy levels,*" "*can* ease . . . tension," or "*may* help relieve tension," (Dkt. No. 21, ¶ 21), these claims are so vague, non-specific, and subjective that they are non-actionable puffery. *See XYZ Two Way Radio*, 214 F. Supp. 3d at 184 (finding puffery where challenged statements were "couched in aspirational terms—'committed to,' 'aim to,' 'believe deeply'—that cannot be proven true or false"); *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F.Supp.3d 361, 371 (S.D.N.Y. 2019) ("Statements [by weight loss company] touting '[a] healthier you' and 'push[ing] past plateaus' could plausibly be understood to describe subjective feelings of physical or mental well-being . . . [and] fall comfortably within the category of non-actionable puffery"); *AirHawk*, 2016 WL 9584008, at *4, 2016 U.S. Dist. LEXIS 189986, at *9 (finding that claims that a product "eliminates painful pressure points" and "promotes proper circulation" are "subjective terms whose meaning varies from person-to-person" and non-actionable under the Lanham Act). The advertising describes "intangible, non-measurable benefit[s] akin to puffery." *Lisowski v. Henry Thayer Co.*, 501 F. Supp. 3d 316, 335 (W.D. Penn. 2020) (finding statements that facial mist has "natural healing powers" and "bring[s] about a natural glow" are puffery). A reasonable consumer could not rely on the vague advertising language that the oils "*can* help promote feelings," "*may* help relieve tension," or "*promote*" assorted feelings. *See, e.g., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (concluding that statements qualified with terms such as "aims to," "wants to," and "should" were not actionable as securities fraud). These are not representations that the oils provide specific benefits. In fact, from the cited language a reasonable consumer could expect that the oils may *not* help promote feelings or may *not* relieve tension. *See, e.g., Stewart v.*

*Ocean State Jobbers, Inc.*, No. 17-cv-1266, 2018 WL 379011, at *3, 2018 U.S. Dist. LEXIS

5716, at *6–7 (D. Conn. Jan. 10, 2018) (finding representation that batteries have "up to 6x

longer lasting power" is puffery as a matter of law because the phrase "up to" could lead a

reasonable consumer to expect that the power could be less than six times longer); *Serrano v.*

*Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 167–68 (E.D.N.Y. 2012) (claim that internet speed

was "up to 5x faster" was puffery). With respect to oils for which Plaintiff has not alleged that

there were any representations beyond "therapeutic-grade," given the vague and nonspecific

representations about how the other oils "*promote[d]*," various "feelings," Plaintiff has not

plausibly alleged that a reasonable consumer could be misled by the label "therapeutic-grade" for

any of Young Living's oils.

The purported instructions by Defendant's product marketing staff to "its member-sales

people" contain similarly vague, subjective representations regarding the efficacy of its essential

oils and the benefits they provide:

> When describing therapeutic-grade essential oils to someone else,
> it's important to relay that ***every essential oil Young Living distills***
> ***or sources has the highest naturally-occurring blend of***
> ***constituents to maximize the desired effect.*** . . . The [Young Living]
> promise is a bold statement—but you can share our products with
> confidence, knowing that Young Living truly has the experience to
> produce essential oils that work.

(Dkt. No. 21, ¶ 22). In a re-post on the D. Gary Young Blog maintained by Young Living, the

blog under the guise of "Gary" made the following representation and answered the following

question:

> Pure, therapeutic-grade essential oils can have therapeutic effects on
> their users. The purer the oils, the stronger the benefits
> . . . . Peppermint essential oil should contain between 38 and 47
> percent menthol to be therapeutic . . . . Look for a guarantee of
> therapeutic grade, which Young Living provides.
> . . .

17

> [Q]uestion: "If an oil is labeled 'pure, therapeutic-grade,' can I be
> sure that it is?"
>
> [A]nswer[]: "NO! Look for a guarantee of therapeutic-grade which
> Young Living provides."

(*Id.* ¶¶ 22–23) (emphasis omitted).[8] These statements reflect that Defendant may intend "therapeutic-grade" to communicate that its Products "work" and are pure, natural, and of the highest quality, but these representations are couched in boastful, non-specific language, i.e, "maximize the desired effect" and "Young Living truly has the experience to produce essential oils that work," *see Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 542 (S.D.N.Y. 2018) (finding representations regarding "level of experience or skill" as well as representations that attorneys were "highly qualified," "the right," or the "best" could "only be subjective" puffery); *XYZ Two Way Radio*, 214 F. Supp. 3d at 184 (finding "[t]he overall tone" of website and blog post statements to be puffery as they were "boastful and self-congratulatory"), that ultimately neither promises nor even identifies any specific "therapeutic effects," "benefits" or characteristics. *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) (explaining that "[p]uffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language," "is considered to be offered and understood as an expression of the seller's opinion only," and "is distinguishable from misdescriptions or false representations of specific characteristics of a product") (internal quotation marks and citation omitted).

Finally, viewing the advertising and marketing scheme as a whole, *see, e.g., George*, 2020 WL 6802955, at *2, 2020 U.S. Dist. LEXIS 217016, at *6 (considering the plaintiff's contention "that the whole of Starbuck's brand messaging is more than the sum of its parts"),

---

[8] There is no challenge to the truth of Defendant's representation regarding the purity of Defendant's Products or the truth of its representations regarding the percentage of its constituents.

does not lead to a different conclusion. While Defendant undoubtedly intends to create the impression that its Products "work," its campaign as a whole does not imply any "specific, falsifiable fact" regarding its Products' purported health or medical benefits. *Id.*, 2020 WL 6802955, at *3, 2020 U.S. Dist. LEXIS 217016, at *7. Defendant makes only vague, non-committal representations regarding the health benefits its Products *may* provide—stating, for example, that the Products "[m]ay help relieve tension," "create[] the feeling of normal clear breathing," "promote a sense of clarity and focus," or "help[] to maintain energy levels." (Dkt. No. 21, ¶ 22). Further, the statements on Defendant's website and in its blog posts contain no factual representations whatsoever. Thus, even viewed together, "the challenged statements cannot reasonably be understood as specific representations of objective facts." *XYZ Two Way Radio*, 214 F. Supp. 3d at 184. As non-actionable puffery, the Court concludes that Defendant's statements cannot support a claim under the NYGBL, and Counts II–IV are dismissed.[9]

**D.     Unjust Enrichment–Pleading with Particularity under Fed. R. Civ. P. 9(b)[10]**

Defendant argues that the FAC's unjust enrichment claim must be dismissed because it "lack[s] the requisite particularity under the higher pleading standard imposed by [Rule] 9(b)." (Dkt. No. 26-1, at 19–21). Plaintiff responds that as alleged, the unjust enrichment claim "easily meets" Rule 9(b)'s "higher pleading standard." (Dkt. No. 27, at 18). The Court disagrees.

---

[9] Plaintiff's unjust enrichment and warranty claims are based on the same representations the Court found to amount to non-actionable puffery, and are likely subject to dismissal on grounds of non-actionable puffery. *See infra* notes 12, 14. As the parties disagreed at oral argument regarding whether a finding of puffery would require dismissal of Plaintiff's remaining claims and they have not briefed this issue, the Court has, in an excess of caution, addressed whether the FAC otherwise plausibly alleges unjust enrichment and breach of warranty claims.

[10] At this stage, the Court has reviewed only Plaintiff's New York law claims. Because the Court dismisses all of Plaintiff's New York law claims and finds the FAC subject to dismissal, *see Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 76 (E.D.N.Y. 2008) ("The unnamed class members are not technically part of the action until the court has certified the class; therefore, once the named plaintiffs' claims are dismissed, there is no one who has a justiciable claim that may be asserted."), the Court need not address Defendant's argument that the consumer protection statutes of the twelve other states require pleading with particularity under Rule 9(b).

"By its terms, Rule 9(b) applies to 'all averments of fraud.'" *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting Rule 9(b)). Rule 9(b)'s wording is "cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Id.* (holding that Rule 9(b)'s heightened pleading standard applies to securities fraud claims "insofar as the claims are premised on allegations of fraud" even where "[f]raud is not an element or a requisite to [the] claim"); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) ("Rule 9(b) does not apply only to claims under RICO and common law fraud, but also to elements of other claims that are premised on fraud.").[11]

Here, the FAC advances a "common law claim for unjust enrichment," alleging that "Defendant's conduct violated federal and state consumer protections statutes by advertising, marketing and selling the Products while misrepresenting the Products as 'therapeutic' and having physical, health and/or medicinal benefits and omitting material facts," allowing them to "knowingly realize substantial revenues . . . at the expense of and to the detriment of Plaintiff and Class members." (Dkt. No. 21, ¶¶ 169–70). "To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution." *Astor Holdings, Inc. v. Roski*, No. 01-cv-1905, 2002 WL 72936, *17, 2002 U.S. Dist. LEXIS 758, at *54 (S.D.N.Y. Jan. 17, 2002) (citing *Louros v. Cyr*, 175 F. Supp. 2d 497 (S.D.N.Y. 2001)). However, where, as here, an unjust enrichment claim is based on allegations of intentional misrepresentation, courts have generally required the complaint to

---

[11] Although Defendant argues that the entire FAC should be dismissed for failure to allege fraud with particularity, it only argued, and the Court has only considered, the Rule 9(b) pleading standard with respect to the claim for unjust enrichment. (*See* Dkt. No. 26-1, at 20–22).

satisfy Rule 9(b). *See Hughes*, 930 F. Supp. 2d at 471 (applying Rule 9(b) to New York common law unjust enrichment claim where the plaintiffs alleged intentional misrepresentation); *DeBlasio v. Merrill Lynch & Co.*, No. 07-cv-318, 2009 WL 2242605, at *12, 2009 U.S. Dist. LEXIS 64848, at *39 (S.D.N.Y. July 27, 2009) (applying Rule 9(b) to unjust enrichment claim based on "allegations of intentional misrepresentations and omissions," explaining that the "quotations from the [complaint] make clear [that] this action is based on averments of fraud"). To satisfy Rule 9(b)'s particularity requirements, a complaint must "(1) specify the statements that the plaintiff contends were [intentional misrepresentations], (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were [misrepresentations]." *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Defendant contends that Plaintiff did not meet this heightened pleading standard because the FAC does not set forth which essential oils Plaintiff purchased, when she purchased the products in the last four years, which website she purchased the products from, what specific statements she saw or relied on, or what "specific benefits she hoped for but did not receive." (Dkt. No. 26-1, at 21–22). Plaintiff responds that she adequately set forth the "who, what, when, and where" required for 9(b) pleading. (Dkt. No. 27, at 19)

Plaintiff alleges in the FAC that she purchased products "includ[ing], but [] not limited to, frankincense, lavender, peppermint, eucalyptus, cinnamon and orange Young Living essential oils" online in the last four years, "and specifically on or around February 2020." (Dkt. No. 21, ¶ 61). Courts have found a range of dates to be sufficient to allege when the statements at issue were made. *See In re Frito-Lay North America, Inc. All Natural Litig.*, No. 12-md-2413, 2013 WL 4647512, at *23, 2013 U.S. Dist. LEXIS 123824, at *73 (E.D.N.Y. Aug. 29, 2013) ("*Frito-*

*Lay*") (finding sufficient allegations that plaintiffs purchased products once per month during different periods of time "between January 1, 2010 and the present"); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 567–68 (S.D.N.Y. 2017) (finding allegations of "the approximate date of the purchase," including an allegation that a plaintiff purchased a product "during the summer of 2014" sufficient). Plaintiff's allegations that she purchased the products "[i]n the last four years, and specifically on or around February 2020," (Dkt. No. 21, ¶ 61), pleads with sufficient particularity when she purchased the products.

In general, plaintiffs are "not required to plead precisely where they purchased the products." *Frito-Lay*, 2013 WL 4647512, at *23, 2013 U.S. Dist. LEXIS 123824, at *73 (finding sufficient pleadings that did not state where plaintiffs purchased the products). Plaintiff's allegation that she purchased Young Living products "online" is therefore sufficient. (Dkt. No. 21, ¶ 61).

However, the FAC otherwise fails to meet Rule 9(b)'s pleading standards. The FAC does not allege whether Plaintiff received the "physical, mental, or medicinal" effects she expected to receive from Young Living's products. *DiMuro*, 572 F. App'x at 30 ("From the allegations in the complaint we do not know . . . what benefits Plaintiffs hoped for but did not receive"); (*see* Dkt. No. 21, ¶ 62 (alleging only that Plaintiff "purchased the Products believing . . . that they would confer a physical, mental, or medicinal benefit," and that she would not have purchased them "had she known that they did not provide the promised benefits")). Plaintiff's assertion that she "used the products in the manner Defendant instructed her to, either on the Products label and/or in the marketing and advertising materials included with her purchase and/or as seen by the Plaintiff on Defendant's website" is insufficient to plead with particularity that plaintiff "used the product as directed," beyond a conclusory assertion that she did so, without alleging which

directions she followed or specifying what that use was. (Dkt. No. 21, ¶ 64); *DiMuro*, 572 F. App'x at 31 ("the complaint fails to allege that any of the named Plaintiffs even *used* the product, let alone used the product as directed").

Further, the FAC references many products sold by Young Living, including Dragon Time, Lavender, Bergamot, RC oil, Brain Power, One Heart, and Peppermint essential oil products. (Dkt. No. 21, ¶ 21). The images in the FAC reflect that different products are categorized as "essential oil[s]," "essential oil blend[s]," or "essential oil supplement[s]." (*Id.* ¶ 19). The FAC references numerous therapeutic and health-related claims made by Young Living, including the "therapeutic-grade" claim on the labels, but also references on the website to health benefits ranging from relaxation, relief from anxiety, better sleep, clear breathing, focus, treatment of depression symptoms, reduced stress, and energy. (*Id.* ¶¶ 19, 21). As in *DiMuro*, the FAC "fails to allege facts explaining how *each product* did not work as advertised and why any *specific* advertising claim for each product is false," nor does it specify which advertising statements Plaintiff saw and relied on. 572 F. App'x at 30 (emphasis added); (Dkt. No. 21, ¶¶ 61, 63 (the products Plaintiff purchased "included, but were not limited to, frankincense, lavender, peppermint, eucalyptus, cinnamon and orange Young Living essential oils," and "[i]n addition to relying on the guarantee of the oils being 'therapeutic-grade,' Plaintiff viewed and relied on, *inter alia*, Defendant's claim(s) or claims substantially similar to [claims regarding the health benefits of frankincense, lavender, and peppermint oil]")). This constitutes what the Second Circuit referred to as "group-pleading as to the products and the advertisements at issue," and does not satisfy Rule 9(b)'s particularity requirements. *DiMuro*, 572 F. App'x at 30. Without a delineation of what specific health or therapeutic benefits are unsubstantiated or lacking, and as to which products, the FAC is not sufficient to provide Defendant "fair notice of plaintiff's

23

claim, to enable preparation of [a] defense," as Rule 9(b) requires. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Therefore, Plaintiff's unjust enrichment claim (Count VIII) is dismissed for failure to satisfy Rule 9(b) pleading requirements.[12]

### E.    Breach of Warranty Claims[13]

#### 1.    Notice

Defendant moves to dismiss all of Plaintiff's breach of warranty claims for failure to adequately plead that she gave Defendant pre-suit notice of the breach, as required under New York law. (Dkt. No. 26-1, at 30). Plaintiff responds that "a plaintiff's pleadings may constitute reasonable notice in certain cases." (Dkt. No. 27, at 28–29). "Under New York law, a buyer must provide the seller with timely notice of an alleged breach of warranty." *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2016 WL 406295, at *12, 2016 U.S. Dist. LEXIS 14000, at *39 (N.D.N.Y Jan. 12, 2016) (citing N.Y. U.C.C. § 2–607(3)(a)). "The U.C.C.'s notice requirement also applies to claims for breach of implied warranty." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 392 (S.D.N.Y. 2021). A "minority of New York State cases suggest an exception to the notice requirement in retail sales," but that exception "appears to be exclusively

---

[12] It appears that Plaintiff's unjust enrichment claim is also likely subject to dismissal to the extent it is based on puffery. *See, e.g., Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *8 n.11, 2015 U.S. Dist. LEXIS 33809, at *22–23 n.11 (S.D.N.Y. Mar. 16, 2015) (evaluating whether, inter alia, unjust enrichment claim was based on non-actionable puffery). Defendant also argues that Plaintiff's unjust enrichment claim, although plead on the alternative, "must be dismissed as duplicative because it was based on the exact same allegations underpinning her other cases of action." (Dkt. No. 26-1, at 32). Because the Court dismisses this claim under Rule 9(b), it need not reach this argument.

[13] Defendant argues in its opening memorandum that by not including the New York statutory provisions governing Plaintiff's breach of express warranty and implied warranty of merchantability claims (Counts V and VI) on the list of state express and implied warranty laws Defendant purportedly violated, Plaintiff has not asserted these claims under New York law. (Dkt. No. 26-1, at 32–33). This argument is brief and Defendant advances it indirectly, couched in a standing argument. (*Id.* at 32). Moreover, as both parties argued the express and implied warranty claims under New York law, (*see, e.g.,* Dkt. No. 26-1, at 30; Dkt. No. 27, at 28–29; Dkt. No. 31, at 7–8), and Plaintiff asserts these claims on her own behalf, (Dkt. No. 21, at 33, 35), the Court construes the FAC as asserting breach of express and implied warranty claims under New York law.

applied where a party alleges physical, in addition to economic, injury." *Colella*, 348 F. Supp. 3d

at 143–44 (collecting cases). However, "the sufficiency and timeliness of the notice is generally

a question for the jury." *Patellos v. Hello Products, LLC*, 523 F. Supp. 3d 523, 533 (S.D.N.Y.

2021) (declining to dismiss a breach of warranty claim for failure to give notice when plaintiff

plead that he first put defendant on notice by filing and serving his original complaint). The

Southern District in *Patellos* explained that there is no "hard and fast rule under which a

complaint filed promptly after discovery of an injury could not supply notice," and that in fact,

there is case law support for the opposite. 523 F. Supp. 3d at 534 (citing *Tomasino v. Estee*

*Lauder Cos.*, 44 F. Supp. 3d 251, 262 n.6 (E.D.N.Y. 2014)). "[W]hat is key is not the form of the

notice, but its timing—that notice be given promptly after the injury occurs." *Patellos*, 523 F.

Supp. 3d at 533.

The Court is not obligated to credit Plaintiff's legal conclusion that she "placed Young

Living on notice of its breach" "[w]ithin a reasonable time." (Dkt. No. 21, ¶ 142); *Iqbal*, 556

U.S. at 678. According to the FAC, "[i]n the last four years, and specifically on or around

February 2020, Plaintiff purchased the Products online." (Dkt. No. 21, ¶ 61). There are no

allegations as to when, in the four years preceding the filing of the March 30, 2021 FAC or the

January 20, 2021 original complaint, Plaintiff used the products or discovered they were

defective. More importantly, the FAC fails to allege *when* Plaintiff provided such notice. In some

cases, courts have found the filing of the complaint to constitute sufficient and timely notice

preceding a breach of warranty claim. *See, e.g., Patellos*, 523 F. Supp. 3d at 533 (finding the

complaint sufficiently alleged notice where the plaintiff alleged that defendant received "notice

of the defect she claimed in its charcoal-based toothpaste products, and thus of its alleged breach

of warranty, giving it an opportunity to cure," when the plaintiff filed the class action complaint

seven months after purchase). Here, however, the FAC does not identify which products Plaintiff

purchased in February 2020 or in the preceding four years, and the Court therefore has no basis

on which to plausibly infer that Plaintiff provided timely notice as to any of Defendant's

allegedly defective products, (Dkt. No. 21, ¶ 61; Dkt. No. 1). *See Tomasino*, 44 F. Supp. 3d at

261 (dismissing breach of warranty claims for failure to provide notice, finding that "the two to

three years that the plaintiff allowed to pass from 'in or about 2010' until the time of her letter on

July 3, 2013, constituted an unreasonable delay," that because the "plaintiff fails to explicitly

allege that she used either of the two ANR products she claims to have purchased, it is

impossible to know precisely when she discovered the alleged breach," and that the plaintiff

failed to allege "any reason why the products' alleged shortcomings would not have been readily

discoverable so that she could have provided notice of the alleged breach of warranty without

delay").[14] Accordingly, Defendant's motion to dismiss the express and implied warranty claims

(Counts V–VII) is granted.

### 2.    Privity

Defendant argues that in addition to failing for lack of notice, Plaintiff's implied warranty

claims should be dismissed because she failed to plead privity of contract with Young Living.

(Dkt. 26-1, at 30–31). Plaintiff responds that this case fits into several exceptions to the privity

---

[14] In any case, it appears that puffery is non-actionable under New York express warranty law. *See Colangelo*, 2020 WL 777462, at *11, 2020 U.S. Dist. LEXIS 26919, at *30–31 ("To prevail on a claim of breach of express warranty, a plaintiff must show an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon . . . However, such an affirmation of fact must be distinguished from puffery, which is not actionable.") (internal quotations and annotations omitted) (quoting *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x 110, 111–12 (2d Cir. 2010), and then quoting *Daley v. McNeil Consumer Prods. Co., a div. of McNeil-PPC*, 164 F. Supp. 2d 367, 376–77 (S.D.N.Y. 2001)). The parties have not briefed whether puffery is actionable under New York implied warranty or unjust enrichment laws, but as each of the warranty and unjust enrichment claims brought under New York law fail on other grounds, the Court need not resolve this question.

requirement, and that a "determination as to whether privity exists is often 'not appropriate at the motion-to-dismiss stage.'" (Dkt. No. 27, at 29).

Under New York law, "[w]hen plaintiffs allegedly suffer only financial, as opposed to personal, injuries, privity of contract between the plaintiffs and the defendant is a necessary element of the breach of implied warranty claims." *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409, 2020 WL 729883, at *8, 2020 U.S. Dist. LEXIS 25594, at *22–23 (E.D.N.Y. Feb. 13, 2020) (citing *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015)). Plaintiff only claims financial injury, and thus this rule applies. (*See* Dkt. No. 21, ¶ 65). Further, as Plaintiff alleges only that she bought Defendant's products "online," and not whether she bought them on Young Living's website or through a third-party vendor, she has not plausibly alleged privity of contract. (*Id.* ¶¶ 13 ("The Products are sold throughout the United States and on consumer retail websites"), 61); *see Colpitts v. Blue Diamond Growers*, No. 20-cv-2487, 2021 WL 981455, at *18, 2021 U.S. Dist. LEXIS 49183, at *46 (S.D.N.Y. Mar. 16, 2021) (dismissing breach of implied warranty claim where the plaintiff pled that "the Product is available to consumers from retail and online stores of third-parties" and Plaintiff's counsel "confirmed that Plaintiff did not buy the Product directly from the defendant," because "lack of an immediate transaction" renders a plaintiff a "remote purchaser") (internal quotations and annotations omitted) (citing *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 408 (3d Dep't 2008)).

Plaintiff responds that the exception to privity for "direct dealing . . . where, as here, the defendant directly markets its products to consumers and the plaintiff relies on written labels or advertisements of a manufacturer." (Dkt. No. 27, at 29) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); and then citing *In re Rust-Oleum Restore Mktg.,*

*Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 806–07 (N.D. Ill. 2016); and then

citing *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 740 (W.D. Ky. 2013)). She also asserts

an exception for products "sold in a sealed container and ultimately absorbed by the consumer."

(Dkt. No. 27, at 29). However, she cites only out-of-circuit case law for these assertions. And, as

Defendant points out, (Dkt. No. 31, at 9), in-circuit cases have dismissed pleadings in similar

circumstances, rejecting claims of an exception. *See, e.g., Cosgrove v. Oregon Chai, Inc.*, 520 F.

Supp. 3d 562, 586 (S.D.N.Y. 2021) (dismissing breach of implied warranty claim for tea

products plaintiff did not purchase directly from defendant); *Weisblum*, 88 F. Supp. 3d at 296

(not recognizing a "sealed food products or medicines" exception because the cited case law was

displaced by the UCC); *Tomasino*, 44 F. Supp. 3d at 262 (dismissing breach of implied warranty

claims involving cosmetics products).

     Finally, Plaintiff argues that "[p]rivity is . . . not required under the third-party

beneficiary exception where a manufacturer is aware of the remote customer's requirements and

the manufacturer purports to deliver a product to meet those requirements through a dealer."

(Dkt. No. 27, at 30). However, under New York law:

> [P]laintiff claiming rights as a third-party beneficiary must
> demonstrate: (1) the existence of a valid and binding contract
> between other parties, (2) that the contract was intended for his
> benefit and (3) that the benefit to him is sufficiently immediate,
> rather than incidental, to indicate the assumption by the contracting
> parties of a duty to compensate him if the benefit is lost.

*Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 469 (S.D.N.Y. 2014) (internal quotations

omitted). Here, Plaintiff has not alleged the existence of a contract between a supplier and

Defendant intended for her immediate benefit, and thus, does not satisfy the requirements for

such an exception. Plaintiff's breach of implied warranty claims thus merit dismissal for failure

to allege privity of contract.

**F.      Dismissal of the FAC and Leave to Amend**

For the reasons discussed above, each of Plaintiff's claims raised under New York Law

(NYGBL §§ 349 and 350, breach of express and implied warranty, and unjust enrichment), are

dismissed. Because no claims under New York law remain, it does not appear that Plaintiff has

Article III standing to pursue her other claims, which arise under the laws of other states, and

thus cannot raise them on behalf of yet unnamed class members. *See Langan v. Johnson &*

*Johnson Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018) ("[A]s long as the named plaintiffs have

standing to sue the named defendants, any concern about whether it is proper for a class to

include out-of-state, nonparty class members with claims subject to different state laws is a

question of predominance under Rule 23(b)(3)"). Thus, the Court dismisses the FAC in its

entirety.[15] *See Leonard v. Abbott Labs., Inc.*, No. 10-cv-4676, 2012 WL 764199, at *7, 2012

U.S. Dist. LEXIS 30608, at *18 (E.D.N.Y. Mar. 5, 2012) ("Generally, the dismissal of the named

plaintiffs claims before a motion for class certification has been filed would result in the

dismissal of the complaint") (citing *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 76

(E.D.N.Y.2008) ("The unnamed class members are not technically part of the action until the

court has certified the class; therefore, once the named plaintiffs' claims are dismissed, there is

no one who has a justiciable claim that may be asserted."), and then citing *Phillips v. Ford Motor*

*Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("Strictly speaking, if no motion to certify has been filed

(perhaps if it has been filed but not acted on), the case is not yet a class action and so a dismissal

of the named plaintiffs' claims should end the case.")).

---

[15] Given this ruling, the Court need not address Defendant's additional arguments that Plaintiff's consumer fraud act claims fail because they are based on "unsubstantiated" advertising claims, (Dkt. No. 26-1, at 15), or that Plaintiff is "attempting to skirt the [Food and Drug Administration ("FDA")]'s exclusive jurisdiction to enforce the [Federal Food, Drug, and Cosmetic Act ("FDCA")]," (*id.* at 25).

Plaintiff has already amended the complaint once, in response to Defendant's first motion to dismiss, and has not sought leave to amend. The Court is not aware of any facts that would support a viable claim. However, since the parties' briefing did not address the impact of a ruling against Plaintiff on the issue of puffery, the Court will permit Plaintiff to file a letter motion seeking permission to amend. Any such motion must be filed with a proposed second amended complaint, and comply with N.D.N.Y. Local Rule 15(a), and must be filed by January 17, 2021. Defendant may respond in a letter brief by January 24, 2021.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 26) is **GRANTED**; and it is further

**ORDERED** that the First Amended Complaint (Dkt. No. 21) is **DISMISSED without prejudice;** and it is further

**ORDERED** that Plaintiff may file a letter motion seeking permission to amend, as set forth above, **by January 17, 2022,** and it is further

**ORDERED** that the Clerk is directed to close this case if no letter motion to amend is filed by January 17, 2022.

**IT IS SO ORDERED.**

Dated: <u>December 16, 2021</u>
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

## <u>JUDGMENT IN A CIVIL CASE</u>

**LORI MACNAUGHTON,**

**Plaintiff,**

vs.                    **CASE NUMBER: 5:21-CV-71 (BKS/ML)**

**YOUNG LIVING ESSENTIAL OILS, LC,**

**Defendant.**

**Decision by Court.**  This action came to a hearing before the Court.  The issues have been heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that Defendant's motion to dismiss (Dkt. No. 26 ) is GRANTED. It is further ORDERED that the First Amended Complaint (Dkt. No. 21 ) is DISMISSED without prejudice and this action is closed based on plaintiff's failure to file a letter motion seeking permission to amend by January 17, 2022, as set forth in the Memorandum-Decision and Order dated December 16, 2021.

All of the above in accordance with the Order of the Honorable Brenda K. Sannes dated December 16, 2021.

Dated: January 19, 2022

Clerk of Court

Nicole Eallonardo
Deputy Clerk

# Federal Rules of Appellate Procedure
## Rule 4. Appeal as of Right

### (a) Appeal in a Civil Case.

1. (1) *Time for Filing a Notice of Appeal.*

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;
(ii) a United States agency;
(iii) a United States officer or employee sued in an official capacity; or
(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of Judgment.* A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LORI MACNAUGHTON, *individually and on behalf of all others similarly situated*, | Case No. 5:21-cv-00071-BKS-ML |
| Plaintiff, | **NOTICE OF APPEAL** |
| v. | |
| YOUNG LIVING ESSENTIAL OILS, LC, | |
| Defendant. | |

Notice is hereby given that Plaintiff Lori MacNaughton hereby appeals to the United States Court of Appeals for the Second Circuit from the final judgement entered in this action on the 19th day of January, 2022 (Dkt. No. 38), that ordered and adjudged that Defendant's motion to dismiss (Dkt. No. 26 ) was granted.

Dated: February 17, 2022

SIRI & GLIMSTAD LLP
 /s/ Mason A. Barney
SIRI & GLIMSTAD LLP
Aaron Siri
Mason A. Barney
200 Park Avenue, Seventeenth Floor
New York, New York 10166
Tel: (212) 532-1091
E: aaron@sirillp.com
E: mbarney@sirillp.com

Gary M. Klinger*
MASON LIETZ & KLINGER LLP
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com

Gary E. Mason*
MASON LIETZ & KLINGER LLP
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Phone: 202.640.1160
Fax: 202.429.2294
gmason@masonllp.com

*Pro hac vice*
*Attorneys for Plaintiffs and the Class*